JESSE A. McDONALD, Trustee, Respondent, v.
M. M. MAY, Appellant.

St. Louis Court of Appeals, October 7, 1902.

1. **Lessor and Lessee:** SURRENDER OF LEASEHOLD: RENT:
SUBTENANT, RIGHTS OF: PRIVITY OF CONTRACT: PRIVITY
OF ESTATE: RULE. There is an ancient rule that a lessor who
has accepted a surrender of the leasehold from the lessee, can not
thereafter recover rent from a subtenant, because neither privity of
contract nor estate exists between the original lessor and the under-
lessee.

2. ———: ———: ———: ———. None of the Missouri statutes
concerning landlord and tenants has altered this rule.

3. **Under Lessee:** ATTORNMENT: LESSOR: TERMS OF SUB-
LEASE: RENT. But if the under-lessee attorns to the original
lessor after the surrender by the mesne tenant, the under-lessee is
thereafter liable to the landlord for rent for the full terms of the
sublease.

Appeal from St. Louis City Circuit Court.—*Hon. Wal-
ter B. Douglas,* Judge.

AFFIRMED.

STATEMENT OF THE CASE.

A corporation, known as the Empire Building
Company, let certain premises in the city of St. Louis
to another corporation, the Sanford Building Com-
pany, for ninety-nine years, on the first day of Jan-
uary, 1895. The Sanford Building Company sublet the
premises to appellant May for eighteen months from
the first day of June, 1899, and it is admitted May occu-
pied them and paid rent until December, 1899, the rent
after September of that year being paid to respondent
McDonald or his agent. About the middle of Novem-
ber, 1899, May sold his business and fixtures to Weath-

erby & Zeltner and notified McDonald's agent, Stevenson, that Weatherby & Zeltner had taken possession of the premises; Stevenson made no objection. The firm paid the December rent by check drawn in favor of May, but delivered to Stevenson and indorsed by him in May's name without previous authority, although he claims he afterwards told May about it, who denies that he did.

Weatherby & Zeltner moved out in January, 1900. No rent was paid afterwards except by certain other tenants, who occupied the premises a short time, and this action was instituted to collect the rent from May for the portion of his term under the lease made to him by the Sanford Building Company for which no rent has been paid.

There is an acute conflict of testimony as to whether May surrendered the premises to McDonald when he sold to Weatherby & Zeltner, and McDonald through his agent Stevenson accepted the surrender and recognized that firm as McDonald's tenants, or whether they occupied as May's tenants.

Stevenson rented the premises afterwards to two other tenants and collected some rent directly from them for which May was given credit on account. May claims that McDonald took the keys when Weatherby & Zeltner went in and always kept them, and hunted tenants thereafter. But Stevenson claims that May merely left the keys with him for convenience and that he was trying to get new tenants for May and for the latter's benefit.

The circuit court found against the appellant on the issue of fact as to whether there was a surrender of the premises to McDonald, and that finding settles the matter.

McDonald's interest in the premises came about in this way: the original owner and lessor, the Empire Building Company, conveyed the premises by warranty deed acknowledged on the fifth day of September, 1899, to the Howard Realty Company, and on the same day the last-named company conveyed them by deed of

trust to McDonald as trustee. On the same day, too, a contract was made between the first lessee, the Sanford Building Company and its lessor the Empire Building Company, which witnessed among other things the following:

"That in consideration of one dollar to the said Empire Building Company, paid by the Sanford Building Company, the receipt whereof is hereby acknowledged, the said Empire Building Company does hereby release and discharge the said Sanford Building Company from any and all obligation to continue and carry out a certain lease made by the said Empire Building Company, lessor, to said Sanford Building Company, lessee of date December 26, 1894, by which lease said Empire Building Company did lease to the said Sanford Building Company for a term of ninety-nine years the following described property." . . .

"The said Sanford Building Company, in consideration of the fact that it has been unable to pay the rents and taxes on the said property in said lease stipulated, and is now in arrears for the rent from January 1, 1899, desirous of escaping any further liability under said lease, does hereby release and discharge the said Empire Building Company from any and all obligations to carry out the terms of said lease, and the said lease is hereby cancelled by mutual consent of the lessor and lessee and full and complete possession of all said property is hereby given to the lessor."

The first (A) of the following declarations was given at respondent's request; the next three were asked by appellant and refused, and the fourth was given. They will show the theory on which the case was decided:

"A. The court declares the law to be that by the contract between the Sanford Building Company and the Empire Building Company, the latter succeeded to all the former's rights under its sublease to defendant.

"1. The court declares the law to be that if the court believes that the Sanford Building Company

held the property in question as lessee under a lease from the Empire Building Company and that while holding the property in question under such lease the Sanford Building Company rented the premises, for the rent of which this suit is brought, to defendant, and if the court further believes that by an instrument in writing the contract or lease between the Empire Building Company and the Sanford Building Company was cancelled, and that there was no assignment by said Sanford Building Company to the Empire Building Company, or the plaintiff in this case, of its contract with defendant, then there was no privity of contract between the defendant and the plaintiff, and that defendant is not liable to the plaintiff as lessee under the terms of said lease, and the court will find for defendant.

"2. The court declares the law to be that the cancellation of the contract of lease between the Empire Building Company and the Sanford Building Company as a necessary consequence cancelled the lease from the Sanford Building Company to the defendant.

"3. If the court believes from the evidence that defendant May, on or before the first day of December, 1899, turned over the possession of the premises involved to another party who occupied them with the knowledge and consent of the Howard Realty Company and plaintiff, and that plaintiff accepted rent from said other party for the month of December, 1899, then the court will find that by such acts the term of defendant was surrendered and defendant was no longer bound as tenant of the premises and the court will find for defendant.

"4. If the court believes from the evidence that defendant, or the party to whom he turned over possession of the premises, surrendered the key to said premises to plaintiff or his representative, and that such surrender was accepted and said plaintiff or his representative rented or attempted to rent said

McDonald v. May.

premises to other parties, then the court will find that such surrender and acceptance terminated defendant's tenancy, and will find for defendant.''

*Henry M. Post* for appellant.

(1) The principle governing the case is stated broadly in 18 Am. and Eng. Enc. of Law, at page 296, in this language: ''A surrender by the original lessee can not defeat the interest of a subtenant. And it would seem that, in such a case, in the absence of express statutory provisions, the subtenant would be released from all liability for rent during his term, either to the original lessor or to the original lessee (the lessor of the subtenant), since, the rent being an incident of the reversion, the original lessee could not recover it, having parted with his reversion, and the original lessor could not recover it because on the surrender of the lease the reversion which was in the lessee merged in the greater reversion of which the lessor was already possessed.'' ''A surrender is never allowed to operate injuriously to the rights of third parties; and, therefore, a tenant can not, by a surrender of his lease to his landlord, affect the estate or rights of his underlessee. Shep. Touch., 301; McKenzie v. Lexington, 4 Dana, R. 129. But although a tenant who has made an underlease can not by a surrender prejudice his tenant's interest, yet he will himself lose the rent he has reserved upon the underlease; for since rent is an incident to the reversion, the surrenderer can not collect it, because he has parted with his reversion to the lessor; nor can the surrenderee have it, because, although the reversion to which it was incident has been conveyed to him, yet, as soon as it was so conveyed, it merged in the greater reversion of which he was already possessed, and the consequence is that the underlessee holds without the payment of any rent; except where the contrary has been expressly provided by the statute.'' Smith's Land. and Tenant, 232. (2) If defendant occupied

McDonald v. May.

the premises after September 1, 1899, since his contract of lease has been ":cancelled," he became. only a tenant at will, or, at best, from month to month, and the admission of another tenant and acceptance of rent from him was an acceptance of surrender of the premises and release of defendant from further liability. (3) The evidence shows that defendant vacated the premises, and that another party was put in possession and accepted as a tenant and paid rent for the month of December. This relieved defendant of any further liability. Jones v. Barnes, 45 Mo. App. 592-3; Buck v. Lewis, 46 Mo. App. 231-2; Matthews v. Tebener, 39 Mo. 115; Hutchison v. Jones, 79 Mo. 496; Taylor, Land. and Ten. (4 Ed.), 516

*Clinton L. Caldwell* for respondent.

(1) The doctrine asserted by counsel for appellant as being a part of the common law, and as such binding upon this court, is uniformly stated in the authorities cited by him, viz.: Since the rent is an incident of the reversion, the surrenderer can not collect it, having parted with his reversion: nor can the surrenderee have it because the reversion to which it is incident, upon the surrender, is merged in the greater reversion of which he is already possessed, and the consequence is the underlessee holds without the payment of any rent. (2) However unjust it may be, it must be admitted the doctrine rests upon some very ancient and eminent authority; but, inasmuch as the American reports and the more modern English reports are singularly lacking in opinions involving its application, the long break in its line of descent, almost from the time of Coke to the case at bar, casts upon it the suspicion either of assimulation or lack of virility. Having its origin in the adjudication of leases upon church lands in an age when there was judicial as well as popular resistance to the encroachments of church power, it was probably fashioned in the mold of occasion. Certain it is its application to modern conditions

is unreasonable.    Chancellor Kent terms the doctrine mischievous and inequitable.   4 Kent's Commentaries, 104.

GOODE, J.—It is to be noted that the petition declared on the lease made by the Sanford Building Company to the appellant, charging that by mesne conveyances respondent succeeded to all the rights of that company under said lease, is entitled to all the rent accrued and accruing therefrom from the first day of December, 1899, and that defendant attorned to him and paid rent to him as trustee under said lease.    The suit is therefore directly on the lease and not for use and occupation, or for any implied letting from month to month by the respondent to the appellant after respondent acquired the title.

Both parties agree that the contract made by the Empire Building Company and the Sanford Building Company, the original lessor and lessee, was a surrender of the ninety-nine year term held by the Sanford Company to the reversioner and then owner of the fee, and we think that construction of the instrument is sound.    It was a surrender by the mutual written agreement of the parties, since it was a voluntary yielding up of the lessee's leasehold interest.    But what relationship was thereby established between May as sublessee and the Empire Building Company which would entitle the latter or its grantee to sue May for the rent after he quit the premises?    Not privity of contract; for there was no contract between them. Was such privity of estate created as gave the Empire Building Company and the respondent as succeeding to its rights, a claim against May as subtenant for rent for the entire term whether he occupied the premises or not?    This question is to be considered in the light both of the common law and of our statutes relating to the collection of rent by an owner of land or his assigns from sub-tenants.

As a covenant to pay rent runs with the land, an assignment of the reversion has carried the right to the

McDonald v. May.

assignee to sue for it since the enactment of the statute 32 H. 8, c. 34, which statute may be treated as part of the common law. But this means an assignment of the reversion to which the rent is incident; and in the case of a sublease, rent is incident to the reversion expectant on the termination of said sublease, which reversion is held by the first lessee, and if assigned, the aforesaid statute will take effect on the assignment and carry the covenant to pay rent to the assignee.

It is to be borne in mind in this connection that an owner of premises who has let them with permission to sublet, has, at common law, no right of action against the sublessee on a covenant contained in the sublease, as there is neither privity of estate nor of contract between the sublessee and the owner. St. J. & St. L. Ry. Co. v. St. L., I. M. & S. Ry. Co., 135 Mo. 173.

Now applying the two foregoing rules to the present case, it is plain that the Empire Building Company could not have sued May on his covenant to pay rent merely because it owned the premises, since any rent he owed pertained to the reversion expectant on his lease, which was vested in the Sanford Building Company and that company alone had the right to sue him. It is also plain that the Empire Building Company never acquired the right to sue him on his covenant unless there was an assignment of his term to said Empire company by the Sanford company or something equivalent thereto; for he never attorned to the Empire company.

The first question then is: Did the surrender by the Sanford Building Company of the main term constitute such an assignment of the underterm to the Empire Building Company as gave the latter a right of action on covenants contained in the sublease? This question is answered by all cases of which we have any knowledge in the negative. The surrender of the main term of a leasehold estate totally extinguishes it and with it any subterms; or rather would extinguish any subterm as a necessary result of the extinction of the main term, but for another rule of law which has been

raised for the protection of undertenants, to-wit; that their rights will not be destroyed or impaired by a surrender of the main lease; and yet the surrenderee may not sue the undertenant for rent or on any other covenant. This rule is both ancient and technical, but has been laid down by all text-writers and followed in all old judgments on the subject. Smith on Landlord and Tenant, 232; Taylor on Landlord and Tenant (4 Ed.), note to sec. 507; Woodfall on Landlord and Tenant (13 Ed.), 307; 18 Am. and Eng. Ency. Law (2 Ed.), 296; Webb v. Russell, 3 Durnford & East. 403; Krider v. Ramsey, 79 N. C. 354.

Both judges and commentators have deplored its hardship as to landlords, because it sometimes operates to cut them out of their rent, while permitting a sub-tenant to retain the premises, and it has been corrected by statute in England.

In Webb v. Russell, supra, it was stated as follows:

"It appears that the person entitled to the reversion of the ninety-nine years term, expectant on the determination of the eleven year term created by the lease, afterwards acquired in her own person the absolute inheritance of the land, in consequence of which the reversion attendant on the lease granted to the tenant no longer existed. Another estate, totally different, arose by the extinguishment of the intervening estate. Many cases were cited on this subject; one of which (Moor 94), is very applicable. There a person made a lease for one hundred years and the lessee made an underlease for twenty years, rendering rent with a clause of re-entry; afterwards the original lessor granted the reversion in fee and the grantee purchased the reversion of the term; and it was held that the grantee should not have either the rent or the power of re-entry; for the reversion of the term, to which they were incident, was extinguished in the reversion in fee. And though this case was only determined at the assizes, yet it was afterwards recognized in the court.

"Considering then that these are covenants entered into with a stranger that do not run with the land, con-

sidering also that the rent is incident to the reversion out of which the term is carved, and that that reversion is gone, it seems to me, with all the inclination which we have to support the action (and we have hitherto delayed giving judgment in the hope of being able to find some ground on which the plaintiff's demand might be sustained) that it can not be supported. The defense which is made is of a most unrighteous and unconscientious nature; but unfortunately for the plaintiff the mode which she has taken to enforce her demand cannot be supported; and consequently there must be judgment for the defendant.''

Webb v. Russell considered the effect of the statute 32 H. 8, c. 34, it being pressed on the court in that case, that said statute had changed the rule of the common law and that by virtue of it plaintiff was entitled to recover his rent; but it was ruled otherwise; because the surrender of a reversion can not be considered as an assignment of any leasehold granted thereunder and said statute only operates for the benefit of assignees.

We will now consider such statutes of this State as seem to be germane to the question, to-wit; sections 4126 to 4128, R. S. 1899.

The first of said sections is as follows:

"If the owner or holder alien or assign his estate or term, or the rent thereafter to fall due thereon, his alienee or assignee may recover such rent.''

Said section is, in respect to rent, like the statute 32 H. 8, supra, which was enacted to make those covenants that run with the land, run with the reversion also, and the construction given to the English statute is the only one which can properly be given to ours. Hence, whether that section makes respondent's standing good, depends on whether he is assignee by mesne conveyances of the subterm, which depends in turn on whether May's term was assigned by the Sandford Building Company to the Empire Building Company, and we have just ruled that it was not.

Sections 4127 and 4128 are of no benefit to the respondent; for the effect of those statutes was carefully

considered by the Supreme Court of this State in an important case and the conclusion reached that they increased the original lessor's rights against undertenants only in respect to remedies for the recovery of rent provided by the statute, to-wit, a lien on the crops and the privilege of attachment, and not in respect to common-law remedies. St. Jo. & St. L. Ry. Co. v. Railroad, 135 Mo. 173; see, also, Garoutte v. White, 92 Mo. 237.

Respondent's cause is not aided by either of the foregoing statutes.

As has been stated, the lessor could not sue a subtenant at common-law on a covenant, for lack of privity of either contract or estate, and it was held in the foregoing cases that that rule is still in force, notwithstanding the above statute, as to all common-law actions. It follows then, that the Empire Building Company, the original lessor, had no right to collect rent from May which would have passed, by the conveyances introduced in evidence, to the respondent, unless it got that right by the aforesaid contract of surrender, and both the lower court and respondent's counsel took that view. The lower court declared that by said surrender the Empire company succeeded to all the Sandford company's rights under the sublease to May; in other words, that the surrender of the main term was tantamount to an assignment of the subterm. But how could it be? How could a surrender of the ninety-nine year term *assign* the eighteen months term? No assignment occurred by virtue of the surrender, as was distinctly ruled in Webb v. Russell, supra.

It follows that the circuit court erred in giving the declaration of law requested by the respondent.

Did it err in refusing the first and second declarations requested by the appellant? Under the precedents, supra, we might have to answer this question in the affirmative but for one fact which appears in this case and in none of said precedents, to-wit; that May attorned to McDonald by paying him rent after the surrender by the Sanford Building Company, thus es-

tablishing the relation of landlord and tenant between the two, even according to the oldest rule. Now it is settled law that an undertenant's rights are in nowise impaired by a surrender (Eten v. Luyster, 60 N. Y. 252; Gaskell v. Tranier, 3 Cal. 335; Adams v. Goddard, 48 Maine 212), and perhaps equally settled by ancient cases that he may defy the reversioner and keep the premises without paying any rent if he chooses to take that course, as was done in Webb v. Russell. It is a very doubtful proposition whether McDonald would have had any recourse against May if the latter had never attorned to him; but having attorned by paying him rent, we think he elected not only to retain his leasehold, but to recognize McDonald as landlord and entitled to the benefit of any covenant in the sublease which runs with the land or reversion, as does a covenant to pay rent. May thereby waived his privilege (conceding that one existed in his favor) to hold the term, rent free.

This point arose for decision in a modern case where there had been no actual attornment by the subtenant to the surrenderee, and it was ruled that inasmuch as the surrender in no way impaired the subtenant's right to use and enjoy the premises for the full term they had been let to him, an attornment by him to the original lessor on the terms of the sublease, after the surrender by the mesne tenant, would be presumed in order to enable the owner to get his rent, thus repudiating the old doctrine that the undertenant may keep possession without rendering rent. Hessel v. Johnson, 129 Penn. St. 173, 15 Am. St. R. 716. We are not driven to a legal fiction in the present case to evade an unjust doctrine which a court might well hesitate to accept at this day, when the reasons for its existence have vanished with the feudal polity to which it may have appropriately pertained; as by feudal law a lord could not transfer his seignory without his vassal's consent, which was given by an attornment to the new lord.

The contention of May's counsel is that his client's

attornment to McDonald created a tenancy at will between them instead of continuing the full term under the lease.    But as stated, a subtenant's right to hold for his term is unimpaired by a surrender of the main term and as to him the leasehold is not extinguished.    May was entitled to hold for his full term and having paid the rent stipulated for in his lease without making a new arrangement, can only logically be held to have elected to do so; for a tenancy can not be at the will of one party and for a certain term as to the other. As there was no new contract, the relationship of landlord and tenant was established by the attornment according to the terms of the lease; because the estate May was entitled to hold against McDonald was for the whole period embraced in the lease and his obligation to pay rent was as comprehensive as his right to hold the premises.

This view is consonant to the effect of an attornment, which does not raise a tenancy at will between the new landlord and the attorning tenant, but substitutes the new landlord instead of the old one as the party entitled to the rents and other benefits accruing under the original lease. Lindley v. Dakin, 13 Ind. 388; Auston v. Ahearne, 61 N. Y. 6; Pierce v. Pollin, 60 Mo. App. (K. C.) 497.

The rule invoked by the appellant in this case is, as Chancellor Kent said, a pernicious one, against justice and common right, and has been denounced by all the authorities treating of it; we think it ought to be pushed no further than the exact limit fixed by the adjudicated cases, and no case has been cited holding that when an undertenant attorns to the original lessor after a surrender by the mesne lessee, he is entitled to quit paying rent when he pleases; if he begins to pay, it would seem but reasonable that he should pay for his full term.    It follows that appellant's second and third declarations of law were properly refused.

The third refused declaration was erroneous because mere acceptance of rent by a landlord from a person to whom his tenant had turned over the premises

or assigned his interest, will not exonerate the tenant from liability for subsequent accruing rent. Whetstone v. McCartney, 32 Mo. App. (K. C.) 430.

The fourth declaration of law, given at appellant's request, was a correct enunciation of the rule on that subject.

As the error committed in giving the declaration of law in respondent's favor was harmless, in view of the admitted attornment of the appellant after the surrender, and as no other erroneous ruling was made, the judgment is affirmed. *Bland, P. J.,* and *Barclay, J.,* concur.