CLAUDE A. CARLAT and CARLAT & HATLER SHOE COMPANY, Appellants, v. THREE LEADERS CLOTHING COMPANY, Respondent.

Kansas City Court of Appeals, April 6, 1914.

LANDLORD AND TENANT: Subleases: Forfeiture: Surrender. Plaintiffs were lessees of an entire building for a term of years with power to sublease. They subleased a room and basement for a term two days shorter than the termination of their lease giving the sublessee power to sublease. The sublessee in turn sublet the basement and the secondary sublessee spent considerable money in fixing it for occupation, all with the knowledge and consent of the original lessors. The primary sublessee surrendered his lease and received a release from all liability to pay rent although his lease provided that in case he terminated his lease the duty to pay rent should not cease. *Held*, that this was a voluntary surrender of his lease agreed to by the lessees, and hence did not terminate the secondary sublessees term, since a tenant for a term cannot surrender his lease to the prejudice of the subtenant.

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Samuel Eppstein, Cook & Gossett* for appellants.

*Ed. E. Aleshire* for respondent.

TRIMBLE, J.—This is a suit in unlawful detainer brought to recover possession of a basement storeroom under the east first floor storeroom at 107 East Twelfth street, Kansas City. Originating in a justice court, the suit was taken from thence on appeal to the circuit court where, after a trial, a verdict for defendant was directed, and plaintiffs have appealed.

Plaintiffs leased the entire building, known as 105 and 107 East Twelfth street from the owner, Winn, for a term of ten years from May 5, 1908. The lease provided that plaintiffs could sublease, and contained this further clause: "In default of the payment of any installment of rent after the same is due, or upon their failure to keep and perform any conditions of this lease, they will, at the request of George H. Winn, his heirs or assigns, quit and render to him the peaceable possession thereof; and for this cause the obligation to pay shall not cease, but all of their property, whether subject to legal exemption or not, shall be held and bound for the payment of said rent and the fulfillment of the terms of this lease."

Thereafter plaintiffs subleased to Malcolm Mc-Kay the east first floor storeroom and basement for a term two days shorter than plaintiffs lease. At this time the basement was not in condition for use and had no entrance from Twelfth street. McKay's lease also provided that he might sublet all or a part of his premises, and contained the same clause as to surrendering possession upon default in payment of rent as in the lease on the whole building.

McKay fitted up his first floor and ran a moving picture show therein and on April 19, 1912, he in turn

made a secondary sublease of the basement room to defendant from June 1, 1912, to the end of McKay's sublease, to-wit, May 3, 1918, at a rental of $600 for the first year (which was paid down at once), $75 per month for the second year and $100 per month for the remainder of the term.

Under this secondary sublease, defendant went into possession of this basement room and spent something between $600 and $3000 in fitting it for a clothing store and in putting an entrance on Twelfth street.

On August 1, 1912, McKay defaulted in the payment of his monthly installment of rent due on that day, and on August 30, plaintiffs filed suit for possession under the Landlord and Tenant Act. On the day, suit was filed and before summons was served on McKay, he and plaintiffs entered into a written agreement which recited that whereas McKay is in default in his rent and suit for possession has been brought, McKay agrees to enter his appearance and allow judgment to go against him for possession and to turn over all personal property on the premises to plaintiffs, and agrees to deliver peaceable possession of the premises August 31, 1912, and said agreement concluded with this statement: "And in consideration of turning over of aforesaid personal property Claude A. Carlat et al., herewith acknowledge full satisfaction of any and all accrued indebtedness accruing through and under aforesaid lease. And all further obligation on part of Malcolm MacKay to pay rent shall cease from this date."

After having thus surrendered his lease and received a release from all further obligation to pay rent, McKay, on September 4, 1912, entered his appearance and had a judgment entered in favor of plaintiff for possession only.

Plaintiffs took possession of all the premises leased to McKay except the basement subleased by him to defendant.

Carlat v. Clothing Co.

On September 11, 1912, plaintiffs brought a suit under the Landlord and Tenant Act against defendant to obtain possession of the basement in question, but afterwards dismissed that proceeding and brought the present action.

There is no dispute over the fact that plaintiffs knew before the sublease to defendant was made that McKay was going to make it, and plaintiffs also knew defendant was expending money in fitting up the basement room. Plaintiffs told defendant's agent Goodell that McKay had the right to sublet; and there was evidence on the part of defendant that plaintiffs told defendant, before it subleased from McKay, that it could stay in its premises whether McKay failed in his rent or not, and that in case of default on the part of McKay, defendant (or Godell, which was the same) could pay rent to them and for defendant to go ahead, it was all right. This testimony, however, was disputed, and since the court directed a verdict, it cannot be cosidered as furnishing any grounds for such verdict.

It will be observed that defendant paid its rent to McKay up to June 1, 1913. The present suit is for possession. It does not appear whether the dismissed suit brought under the Landlord and Tenant Act was for rent and possession or for possession only. But the evidence shows that no rent was ever demanded of defendant.

Plaintiffs theory of the case is that whether the clause in the lease providing that McKay shall give peaceable possession of the premises upon default in the payment of an installment of rent be termed a forfeiture or whether it is merely one of the terms of the contract by which the lease might be terminated, yet, whenever that provision of the contract was complied with, McKay's lease terminated then and there, and with it went defendant's right to hold as a sublessee under McKay; that defendant took its sublease

with notice of and subject to the right of plaintiffs to terminate the lease in accordance with the terms of the contract, and when those terms were complied with, without fraud or collusion, it ended defendants sublease.

The trouble with this theory is that the transaction between McKay and plaintiffs by which the latter obtained possession of McKay's property was neither a forfeiture nor was it a compliance with the strict terms of the contract by which the life of the lease terminated. The transaction between them was a mere voluntary surrender of the lease on the part of McKay and in consideration of such surrender, and the personal property he turned over, plaintiffs released him from the obligation to pay rent, although according to the terms of the contract he was not to be released. A tenant for a term or for life has no right to surrender his lease to the prejudice of the subtenant. The latter's right cannot be thus impaired or destroyed. [Jones on Landlord and Tenant, Sec. 659; McDonald v. May, 96 Mo. App. 236, l. c. 243, 247.] The trial court was right in holding that the written agreement introduced in evidence showed that McKay's indebtedness was satisfied in full by voluntary agreement, and he was thereby voluntarily released from all further obligations to pay rent, all of which was nothing more than a voluntary surrender of the lease and of his occupancy. This cannot impair the rights of the defendant sublessee. The judgment is affirmed. All concur.