RHINELANDER REAL ESTATE COMPANY, Appellant, *v.* MATTIE CAMMEYER, Individually and as Executrix, etc., of ALFRED J. CAMMEYER, Deceased, Respondent.

First Department, February 26, 1926.

**Landlord and tenant — action against guarantor of payment of rent by subtenant — sublease contained covenant to keep live steam pressure at certain point — principal lease was surrendered to plaintiff landlord — steam pressure was maintained at too low point by plaintiff and subtenant removed from premises after protest — plaintiff became landlord of subtenant at time of surrender of lease and became subject to steam clause therein — said covenant ran with land — steam plant was capable of furnishing adequate pressure — subtenant did not waive provision as to steam pressure as matter of law.**

In an action by a landlord to recover against a guarantor of payment of rent by a subtenant, in which the defense is asserted that the subtenant was constructively evicted from the premises because of a failure on the part of the plaintiff to maintain steam pressure, in which it appears that the sublease contained a provision that the steam pressure should be maintained at a certain point and that, before the expiration of the principal lease, it was surrendered to the plaintiff landlord, it must be held that by the surrender and acceptance of the principal lease, with knowledge of the steam clause in the sublease, and the attornment by the sublessee to the plaintiff, the landlord became subject to the obligation imposed thereby.

Furthermore, the clause in reference to the steam pressure amounted to a covenant running with the land, for it is so related to the use and enjoyment of the demised premises for the specific purpose of the subtenant's business and so touches and concerns the continuance of the use of the premises for the purpose of the letting that in its very nature it must be held to run with the land.

The evidence shows that the steam plant of the building was capable of maintaining the stipulated pressure and it cannot be held, as a matter of law, that the subtenant waived the clause by remaining after the steam pressure was not maintained at the required point, since it appears that during all that time the subtenant protested and threatened to remove from the premises unless the steam pressure was maintained.

APPEAL by the plaintiff, Rhinelander Real Estate Company, from a determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county

of New York on the 27th day of February, 1925, affirming a judgment of the City Court of the City of New York in favor of the defendant, and also affirming an order denying plaintiff's motion for a new trial made upon the minutes.

*Laughlin, Gerard, Bowers & Halpin* [*Spotswood D. Bowers* of counsel; *Stewart W. Bowers* with him on the brief], for the appellant.

*Rose & Paskus* [*Louis Salant* of counsel; *Stanley B. Ecker* with him on the brief], for the respondent.

McAvoy, J. In the City Court a verdict of a jury was rendered in favor of the defendant. The suit was brought for rent against the defendant as executrix of her husband's estate. She was the guarantor of the lease of premises belonging to the plaintiff.

The defense which prevailed was, that defendant's principal had been constructively evicted from the premises. The lease under which rent was sought was not performed by rental payment to plaintiff, because of the failure of the plaintiff to furnish live steam in accordance with a covenant in the lease. The covenant provides: " It is further agreed that the party of the first part shall furnish the party of the second part live steam at a pressure of eighty pounds (at the outlet) through a two-inch pipe, such steam to be furnished daily, Sundays and holidays excepted, between the hours of 7:30 A. M. and 6 P. M."

This covenant was contained in a lease made to a sublessee by a corporation known as " Cammeyer," which at the time of its execution was occupying the store floor and basement of the building in question, engaged in the operation of a retail shoe store. The principal lease was made by plaintiff's predecessor in title to Alfred J. Cammeyer and provided for the letting of the entire building from May, 1892, running over a term of eleven years. By successive renewals by the plaintiff's predecessor, and then by plaintiff, the lease ran down to February 1, 1919. In August, 1914, a sublease by the " Cammeyer " corporation was made to a concern known as Herman Moritz & Excelsior Shrinking Co., Inc. This lease expired at the date of the expiration of the principal lease to Alfred J. Cammeyer, just mentioned, that is, on February 1, 1919. It let out the second loft of the building, which was the third floor, and it provided for a rental of $500 a month, and an additional charge of $5 a month for Croton water. The premises were demised for the use of a sponging and shrinking business, and so that the sublessee might carry on this sponging business properly, the landlord, " Cammeyer," made the agreement contained in the covenant quoted above. Thirteen months before the expiration of the lease from plaintiff to Cammeyer, there was.

a prospect of leasing part of the premises to a new tenant who was willing to take a long-term lease of the store floor and basement, providing it could obtain possession from January 1, 1918. This required the consent of the Cammeyer Estate (Alfred J. Cammeyer having in the meantime died), and also the consent of " Cammeyer," the corporation, and accordingly an agreement was made on the 11th of December, 1917, between Mattie Cammeyer, as executrix of the estate of Alfred J. Cammeyer, and " Cammeyer," the corporation, and plaintiff by which both the executrix and the corporation surrendered the lease of the entire building as of January 1, 1918. Plaintiff accepted the surrender and released both the executrix and the company from all obligations under the chief lease and its renewals and the defendants guaranteed the plaintiff the payment of rental by the Columbia Corrugated Paper Company, the new tenant, and by the subtenants of the upper floors, including the Moritz Company, whose guaranteed rent is sued for here, up to February 1, 1919, the expiration date of the principal lease.

There is no doubt that at the time of the negotiations leading up to the agreement the plaintiff was specifically notified of the existence of the leases to the subtenants on the upper floors, including the Moritz Company. The leases were exhibited to and examined by the general manager of plaintiff, and the nature of the covenant in the Moritz Company lease from " Cammeyer," the corporation, to supply live steam was within the knowledge of the plaintiff. In fact, plaintiff's manager informed its visiting superintendent, who was in charge of this building for plaintiff, that after January 1, 1918, plaintiff would be obliged to supply live steam to the Moritz Company at eighty pounds pressure. After " Cammeyer," the corporation, left the store and basement by the 1st of January, 1918, plaintiff took charge of the management and began the control and operation of the boiler by which the steam was supplied for the Moritz Company. We cannot conclude that " Cammeyer," the corporation, was a mere unauthorized assignee of Alfred J. Cammeyer. The conduct of the plaintiff toward this corporate assignee of the lease and its treatment of its occupancy and its insistence on its participation in the agreement of December, 1917, so recognized it as to constitute the corporation, " Cammeyer," as an attorned sublessee. The Cammeyer Corporation and the estate had thereafter nothing to do with the building or its management. This subtenant, the Moritz Company, was billed for the rent by plaintiff direct and paid the rent to plaintiff. For four or five weeks after plaintiff began to operate the building the supply of live steam was adequate to the needs of the Moritz

Company and no complaint was made as to its insufficiency. Some time in February the Moritz concern complained that the steam pressure for parts of the working day would go down to thirty-five pounds and lower, which rendered the work of the company in its sponging business impossible. Complaints were made to the superintendent at the building, to the visiting superintendent, and to the engineer. Plaintiff's main office was notified by telephone and by a letter in April, 1918. These complaints were followed by promise to improve the service, but defendant asserts that no actual improvement continued for any appreciable time.

The Moritz Company was doing work for the United States government under contracts for war material and the government inspectors were complaining that the sponging was not properly done because of this insufficient steam pressure. The contracts with the government called for seventy pounds pressure, but the quartermaster's representatives were willing to allow a leeway with a pressure of sixty or even fifty pounds, and the Moritz Company was willing to forego the provision of the lease requiring eighty pounds pressure and to be satisfied with whatever the government inspectors would pass. It, therefore, waited upon the hope of possible substantial improvement of the service as promised until August 26, 1918, when the government gave notice to the Moritz Company that no further work would be sent to it because of improper sponging due to insufficient steam pressure, and that the government contracts would not be reinstated unless the steam pressure was improved. The Moritz Company then wrote the plaintiff of this notice from the government, demanded formally a better service and stated that unless the demand was complied with it would move out and hold the plaintiff for damages. In response to this letter the visiting superintendent came and promised again the improvement of the service, but no improvement resulting, the Moritz Company removed its plant to other premises, and on September 10, 1918, notified plaintiff that it was installing its plant and machinery in the new quarters and would hold plaintiff responsible for its loss. The moving and installation of machinery required considerable time, and it was not until the early part of November that it was completed. The Moritz Company paid the rent up to and including November, but upon demand for rental after their complete removal, refused to pay rent for any succeeding months.

The suit for rent is against the guarantors only, the Moritz Company not having been sued. The rent sought here is for the months of December, 1918, and January, 1919, in the sum of $505 per month. On the first trial judgment was rendered for these two

months' rent. On appeal the Appellate Term (117 Misc. 67) reversed the judgment and ordered a new trial. On such new trial judgment was rendered for the defendant. Action was dismissed as to the corporation defendant, upon motion for failure to proceed.

The appellant has several points of law which have been ruled against it in the City Court action and at the Appellate Term, First Department, and urges their consideration here because of the importance of the case as affecting damages if defendant's tenants should sue for failure to comply with the provisions of the covenant. The first is that the plaintiff was not required by the covenant to supply eighty pounds of pressure of live steam because this covenant was contained in a lease made by a stranger to the title with whom plaintiff was not in privity of estate through the subtenant's lease, and that plaintiff was not made subject to these terms of the subtenant's lease because the principal lease did not contain a clause requiring such supply of live steam, plaintiff's view of the law being that if there is no privity of estate between the, contracting parties, the assignee will not be bound by nor have the benefit of covenants between the contracting parties.

We think, however, that the plaintiff is mistaken in this stand. The theory upon which it may be charged with performance of this covenant, although it was not the covenantor, nor was the defendant's tenant the covenantee with it, is that in December, 1917, when the Cammeyer Estate and the Cammeyer Corporation made an agreement with plaintiff to surrender and cancel the principal lease as of January first following, and agreed to give up possession on that date and did vacate the premises, the Moritz Company became the tenant, and plaintiff its landlord by operation of law. The interests and the term of the subtenant of the lessee continued as if no surrender had been made. The surrenderees, the owners in fee, became the immediate landlords of the subtenant, with only such rights as the Cammeyer Estate would have had to the possession of the premises during the continuance of the term. Defendant's tenants could not have their rights destroyed or their lease terminated by the plaintiff, except for a breach allowing repossession. When the plaintiff accepted rent from the tenant of the Cammeyer Corporation, the rent which it had received was the rent reserved in the lease. It was not damages for use and occupation nor a new agreement with plaintiff implying a hiring for an indefinite term. The payment of rent and its acceptance was an attornment by the tenant to the landlord under the existing lease. The sublessee could not, therefore, under the same doctrine, by a surrender to the landlord of his tenant in chief be deprived of the benefit of a covenant of the sublease. The relation-

ship of landlord and tenant between the plaintiff and the Moritz Company then became a tenancy upon the terms, provisions and covenants of the sublease then existing, and it included the covenant of the former sublessor to supply live steam.

Plaintiff also says that this covenant to supply eighty pounds pressure of live steam was not one which would run with the land, but in this it is also in error, because this very item is so related to the use and enjoyment of the demised premises for the specific purpose of the defendant's tenant's business and so touches and concerns the continuance of the use of the premises for the purpose of the letting that it must run with the land by its very nature. If such were not the fact, the benefit of such covenants inserted in the sublease for the benefit of a tenant in order to enable him to carry on his business would be lost upon a surrender to another landlord, although he would be still obliged to pay rent and perform other covenants provided in the lease. This cannot be the rule. Plaintiff also asserts that it was required under the learned trial court's charge and the Appellate Term's opinion, on the first appeal, to supply more steam than the plant was capable of producing. This is not so. The facts as evidenced show that the subtenant was content with the supply of sixty or sixty-five pounds pressure and considerably less than the sublease called for, and that it complained only because the actual supply furnished was much lower than sixty pounds. During the several years that the Cammeyer Corporation managed the building and operated the boiler, the supply of steam was quite adequate. The pressure did not run down until May, 1917, and even as late as December, 1917, when the Cammeyer interests moved out, the supply was as high as eighty pounds most of the time and averaged seventy, never going below sixty. This satisfied the Moritz Company and the government inspectors. The chief inspector of the government made a thorough examination of the plant in June 1917, and found the steam pressure fully adequate at that time and thereafter until February or March, 1918. Besides it is asserted by plaintiff that whatever defect there was in the steam pressure was waived by the tenant because of its remaining in the premises long after it originally discovered that the pressure was continuously too light for use. Of course, a waiver might be found as a matter of fact from its continuing the tenancy, but no waiver can be found as a matter of law in this case since the tenant constantly complained and was assured of improvement in the condition upon which it based the ultimate defense of constructive eviction. Especially is this so with a commodity like steam, the pressure of which can be increased without structural or other unusual altera-

tions to the building. It might be increased the following day by the use of different coal or by proper stoking or by more expert boilermen, so that defendant's tenant was not, as a matter of law, estopped through any waiver by conduct or silence to assert its right to move before the expiration of the term by reason of the landlord's failure to perform the covenant providing for the supply of steam.

We think the determination of the Appellate Term and the judgment of the City Court should be affirmed, with costs.

CLARKE, P. J., MERRELL, FINCH and MARTIN, JJ., concur.

Determination affirmed, with costs.