METROPOLITAN LIFE INSURANCE COMPANY, Respondent, *v.* CONRAD HELLINGER, Appellant.

First Department, December 27, 1935.

*Emanuel H. Reichart* of counsel [*Hellinger & Reichart*, attorneys], for the appellant.

*Julius C. Krause* of counsel [*Henry Sillcocks* with him on the brief; *Tanner, Sillcocks & Friend*, attorneys], for the respondent.

MERRELL, J.   Plaintiff brought this action to recover rent of a certain space in the premises at 655 Fifth avenue under a written lease executed by the defendant.   According to the allegations of the amended complaint, Barclay Arrow Holding Corporation, the owner of the premises, executed a lease of the entire building to one William H. Minton on June 6, 1928.   Said Minton assigned the master lease to Plaza Investing Corporation on March 2, 1929.   On May 6, 1929, Plaza Investing Corporation subleased room 607 to the defendant for a term expiring September 30, 1934. On December 30, 1929, Plaza Investing Corporation assigned the master lease to Plaza Trust Company.   On September 13, 1930, Plaza Trust Company assigned all subleases, including that of the defendant, to Barclay Arrow Holding Corporation, the owner of the building.   On December 31, 1931, Barclay Arrow Holding Corporation assigned all rents and leases pertaining to the premises at 655 Fifth avenue to plaintiff.

In a separate and complete defense contained in the answer, the allegation of the plaintiff that the subleases were assigned to plaintiff is denied.   The answer then alleges a first separate and complete defense, which, in substance, makes claim that there is a break in the plaintiff's chain of title, that a contract between Plaza Trust Company and Barclay Arrow Holding Corporation, a copy of which is annexed to the answer as Exhibit A, had the legal effect of extinguishing the defendant's lease as of September 13, 1930.   The paper, Exhibit A, is not the assignment alleged in the amended complaint.   However, for the purpose of the plaintiff's motion to dismiss the separate and complete defense contained in the defendant's answer, and for the purposes of this appeal, the effect of that contract of September 13, 1930, will be considered.

It is the contention of the defendant-appellant, as alleged in his answer, that the contract between Plaza Trust Company and

Barclay Arrow Holding Corporation extinguished the defendant's sublease. The court below held, however, we think, correctly, that the contract aforesaid did not extinguish the defendant's lease, but carried the reversion to the plaintiff's assignor, Barclay Arrow Holding Corporation. A reading of the allegations contained in the first separate and complete defense contained in the answer of the defendant clearly shows that the defendant is relying solely upon the termination of the master lease by reason of the contract of September 13, 1930, whereby Plaza Trust Company assigned all subleases, including the defendant's sublease, to Barclay Arrow Holding Corporation. There is no allegation in the answer that the master lease was terminated by reason of the occurrence of a condition contained therein which would permit either the landlord or the tenant under such master lease to terminate it pursuant to its own terms. Under such circumstances the law seems to be well settled in this State that a sublease is not terminated on cancellation of the master lease, and that the only legal effect of the assignment from Plaza Trust Company to Barclay Arrow Holding Corporation of September 13, 1930, was to transfer the reversion, as incumbered by the sublease, to the then owner of the fee, and that, therefore, the subtenant became the direct tenant of the owner of the fee. The case on which the court below relied in granting plaintiff's motion was *Eten* v. *Luyster* (60 N. Y. 252). This case seems to have been followed consistently by the later decisions on the subject. In the *Eten* v. *Luyster* case the master lease contained a sixty-day cancellation clause. Under the master lease the tenant then sublet a portion of the premises. Prior to the expiration of the sublease the owner and the tenant under the master lease agreed to terminate the master lease, not, however, by taking advantage of the sixty-day provision in the master lease itself. The court held in that case that if the owner and the tenant under the master lease had taken advantage of the sixty-day cancellation clause, the sublease would have fallen with the master lease, since it was subject to all conditions of the master lease, but, inasmuch as the master lease had been canceled by an entirely new contract, the sublease was not affected thereby, but remained in full force and effect. In reaching this decision, the Court of Appeals said (at p. 259):

" The defendants claimed the right of possession and to dispossess the plaintiff under a surrender of the term by the original lessee, without the knowledge or assent of the plaintiff. That surrender, and the consequent merger of the greater and lesser interest, terminated the original lease and the term created thereby, as between the parties to the lease and the surrender.

The covenant, in respect to the termination of the lease upon the specified notice and payment, became inoperative with all the other covenants and conditions of the demise. But it was not competent for the lessor and lessee˙ to affect the rights of third parties by a formal surrender of the lease. *The interests and the terms of the subtenant of the lessee continued as if no surrender had been made. The defendants, the surrenderees and owners in fee, became the immediate landlords of the plaintiff, with only such rights as his lessor would have had to the possession of the premises before the expiration of the term.*" (Italics are the writer's.)

The other case relied upon by the court at Special Term in granting plaintiff's motion was that of *Ashton Holding Co., Inc.,* v. *Levitt* (191 App. Div. 91). That was a case which passed through this court. The facts there are substantially on all fours with those in the case at bar. It was there decided by this court that a sublease was not terminated by the termination of the master lease by special contract. This court was unanimously of the opinion that a sublease was not terminated by a termination of the master lease. Mr. Justice PAGE, writing for this court in that case, said (at p. 93): " The surrender by the immediate landlord of his lease to the owner of the fee, and the consequent merger of the greater and lesser interest terminated the lease of Wiegan, and the term created thereby, as between the parties to the lease. But it was not competent for the owner and its lessee to affect the rights of third parties. The interest and term of the sub-tenant of the lessee continued as if no surrender had been made. The owner of the premises, upon the surrender of the lease, became the immediate landlord of Mollie Levitt, with only such rights as Wiegan would have had to the possession of the premises before the expiration of the term. Wiegan could not sell, give up or surrender anything that did not belong to him. He could not terminate the lease to Mollie Levitt or destroy her right therein. (*Eten* v. *Luyster,* 60 N. Y. 252, 258, 259.) Therefore, when the new owner accepted the rent it was the rent reserved in the lease, and not merely for use and occupation or upon a new agreement of hiring for an indefinite term. It was an attornment of the tenant to the new landlord under the existing lease."

In *Hoffmann Brewing Co.* v. *Wuttge* (234 N. Y. 469) the Court of Appeals held that where the master lease was terminated pursuant to its own terms, citing *Eten* v. *Luyster* (*supra*) with approval, the sublease would terminate. So in *Kottler* v. *New York Bargain House, Inc.* (242 N. Y. 28) Judge CARDOZO, writing for the Court of Appeals, said (at p. 37): " We think the possibility ceased when he surrendered his own lease to the owner of the fee.

So far as the subleases were concerned, the effect of this surrender was equivalent to a transfer of the reversion (*Eten* v. *Luyster*, 60 N. Y. 252, 259; 2 Tiffany on Landlord & Tenant, pp. 1348, 1351)." The language of Judge CARDOZO, above quoted, clearly demonstrates that, so far as subleases are concerned, the transaction was a transfer of the reversion to the owner of the fee. (See, also, *Rhinelander Real Estate Co.* v. *Cammeyer*, 216 App. Div. 299; 2 Reeves Real Prop. [1909 ed.] pp. 915, 916; 2 McAdam Landl. & Ten. [5th ed.] § 324, and cases cited.)

It is evident that even though Plaza Trust Company and Barclay Arrow Holding Corporation had intended to cancel the master lease by the contract which they entered into without making provision for subleases, such contract would have no legal effect upon the continuance of the sublease in existence at the time. The contract upon which the appellant relies clearly indicates that the parties thereto expressly intended not to disturb any of the subleases. That contract provides, among other things, as follows: "This surrender of lease is expressly made subject to the subleases, a schedule of which is hereto annexed, and the party of the second part does hereby assume the obligations imposed upon the lessor in each of said subleases." In the schedule annexed to the contract the name of the defendant as a sublessee appears. The above-quoted provision clearly shows that the parties intended merely to release the Plaza Trust Company from its obligations under the master lease, but did not intend in any way to interfere with the subleases then in force. We think the contract between the Plaza Trust Company and the Barclay Arrow Holding Corporation did not constitute any defense to plaintiff's cause of action, and that the same was properly stricken out by the order appealed from.

The order appealed from should be affirmed, with twenty dollars costs and disbursements to plaintiff-respondent against defendant-appellant.

McAvoy, O'Malley and Glennon, JJ., concur; Untermyer, J., dissents and votes to reverse and deny the motion.

Untermyer, J. (dissenting). The action is for rent of room No. 607 in the building 657–659 Fifth avenue in the city of New York, of which Barclay Arrow Holding Corporation in 1928 was, and apparently still is, the owner in fee.

The complaint alleges that on June 6, 1928, the Barclay Arrow Holding Corporation leased the entire building to William H. Minton. On March 2, 1929, Minton assigned the lease to Plaza Investing Corporation. On May 6, 1929, the defendant leased

from Plaza Investing Corporation room 607 for a term to commence September 1, 1929, and to continue to September 30, 1934. On December 30, 1929, Plaza Investing Corporation assigned its lease of the entire building to Plaza Trust Company. The complaint alleges that on September 13, 1930, Plaza Trust Company assigned all subleases of the entire building to Barclay Arrow Holding Corporation, the owner of the premises, which assignment included the defendant's sublease of room 607. On December 31, 1931, Barclay Arrow Holding Corporation assigned all rents and leases pertaining to the building 657-659 Fifth avenue to the plaintiff and, it is alleged, after such assignment the defendant duly attorned to the plaintiff and recognized the plaintiff as his landlord.

In addition to other denials the defendant by his answer denies the assignment on September 13, 1930, by Plaza Trust Company to Barclay Arrow Holding Corporation of the defendant's sublease and that he has attorned to the plaintiff. By the separate defense, which has been stricken out by the Special Term as insufficient in law, the defendant alleges that on September 13, 1930, Plaza Trust Company, then the assignee of the lease of the entire building, by an agreement in writing which is annexed to the answer, duly surrendered, and Barclay Arrow Holding Corporation, then the owner, duly accepted the surrender of the lease of the building from and after December 31, 1930. Thereby the defendant asserts, the sublease of this defendant, on which it is sought to hold him liable for rent, was completely extinguished from December 31, 1930, by merger of the lease of the entire building in the fee title of Barclay Arrow Holding Corporation. He alleges that though he remained in possession and paid rent under the sublease from December 31, 1930, to January 4, 1933, he did so without knowledge of the surrender. The defendant further alleges that he has performed all the terms of the lease until he removed from the premises on January 4, 1933, and that he is not liable for rent under the sublease after the date of removal.

Assuming, as we must, the truth of the allegations of the answer, it is necessary to determine the effect upon the obligations of the defendant, an undertenant, of the surrender on December 31, 1930, by Plaza Trust Company, the assignee of the lease of the entire building, to Barclay Arrow Holding Corporation, the owner of the fee. Such a surrender would not have affected the rights of a subtenant had he elected to affirm the sublease by refusing to recognize as binding upon him a transaction to which he was not a party. (*Eten* v. *Luyster*, 60 N. Y. 252; *Ashton Holding Co., Inc.*, v. *Levitt*, 191 App. Div. 91; 2 McAdam on Landl. & Ten. [5th ed.]

§ 324.) " It was not competent for the lessor and lessee to affect the rights of third parties by a formal surrender of the lease. * * * The surrenderees and owners in fee became the immediate landlords of the plaintiff, with only such rights as his lessor would have had to the possession of the premises before the expiration of the term." (*Eten* v. *Luyster, supra.*) The consequences are different where the lease is terminated, not by voluntary action of the parties, but on account of a breach by the lessee. (*Hoffmann Brewing Co.* v. *Wuttge,* 234 N. Y. 469; *New York Railways Corp.* v. *Savoy Associates, Inc.,* 239 App. Div. 504; *Ash* v. *Purnell,* 16 Daly, 189.) But here we are not concerned with the *rights* of a subtenant upon the extinction of an intervening estate, but with his *obligations* under such conditions. The two situations are by no means identical, for it is not uncommon that a party is placed in a position where he may elect to affirm or disaffirm a transaction as his interest may suggest. It does not follow, therefore, that because a subtenant under such circumstances may refuse to recognize the surrender as curtailing his rights, he may not avail himself of its legal consequences.

It has been said that " a surrender is the restoring and yielding up an estate or interest in lands to one who has an immediate estate in reversion or remainder." (*Coe* v. *Hobby,* 72 N. Y. 141.) Consequently, when Plaza Trust Company surrendered to Barclay Arrow Holding Corporation the lease of the building, of which it was assignee, the lease was extinguished by merger in the fee. What exactly was the effect of this upon the underlease, which, in the language of the common law, had been " carved " out of the estate which was destroyed? The rent being incident to the reversion, the tenant could not thereafter collect it because he had parted with his reversion to the owner of the fee. The owner could not collect it because, though the reversion to which it was incident had been conveyed to him, yet, when conveyed it merged immediately in the superior title of which he was possessed. So inevitable was this result that even an agreement between the owner and the tenant would have been ineffectual to avert the consequences of their act. (*Schulte, Inc.,* v. *Cross,* 146 Misc. 763.) The parties to the lease could not destroy the intervening estate and at the same time keep alive that which was dependent upon what they had destroyed. By operation of law, the obligation of a subtenant was terminated when the lease was surrendered. Thereafter nothing remained which could have been assigned. Moreover the Plaza Trust Company did not attempt to preserve the subleases by any assignment to the owner, futile though such an attempt would be. It merely surrendered the lease " subject to the subleases, a schedule of which is hereto

annexed," and the owner covenanted to "assume the obligations imposed upon the lessor in each of said subleases." This, quite obviously, was intended merely as notice to the owner of the existence of subleases created by the tenant, *subject* to which the surrender was made and the obligations of which were *assumed* by the owner for the protection of the tenant against claims by subtenants. The interest of the tenant in the subleases was not assigned. Indeed, these provisions did not alter the rights of the parties as they would have existed by operation of law. (*Eten* v. *Luyster, supra.*)

The general rule applicable here is stated in Smith on Landlord and Tenant (p. 232), as follows: "A surrender is never allowed to operate injuriously to the rights of third parties; and, therefore, a tenant cannot, by a surrender of his lease, to his landlord, affect the estate or rights of his underlessee. (Shep. Touch. 301; *McKenzie* v. *Lexington,* 4 Dana, 129.) But although a tenant who has made an underlease cannot by a surrender prejudice his tenant's interest, yet he will himself lose the rent he has reserved upon the underlease; for since rent is an incident to the reversion, the surrenderer cannot collect it, because he has parted with his reversion to the lessor; nor can the surrenderee have it, because although the reversion to which it was incident has been conveyed to him, yet, since it was so conveyed, it merged in the greater reversion of which he was already possessed, and the consequence is that the underlessee holds without the payment of any rent; except where the contrary has been expressly provided by statute." Other commentators state the rule in similar terms. (Tiffany Real Prop. p. 211; Thompson Real Prop. § 1664; Taylor Landl. & Ten. [9th ed.], §§ 517, 518; Woodfall Landl. & Ten. [22d ed.] 306. Compare, also, "Effect of the Surrender of a Lease," 13 Columbia Law Review, 245.) Such always was the common law of England (*Thre'r* v. *Barton,* Moore, 94; *Webb* v. *Russell,* 3 Term Rep. 393; 3 Preston Conveyancing, 448) until changed by statute. (8 & 9 Vict. chap. 106, § 9.) Such also is the law in other jurisdictions. (*Appleton* v. *Ames,* 150 Mass. 34; 22 N. E. 69; *Bailey* v. *Richardson,* 66 Cal. 416; 5 P. 910; *Krider* v. *Ramsay,* 79 N. C. 354; *McDonald* v. *May,* 96 Mo. App. 236; 69 S. W. 1059.)

These principles of the common law, so ancient and so widely recognized, have never been changed by any statute in this State. On the contrary, the only statute which appears to have relation to the subject is convincing evidence that the Legislature, conscious of the rule, intended that it should continue except where, at the time of the surrender, a new lease was acquired by the tenant. Section 226 of the Real Property Law provides: "The surrender of an under-lease is not requisite to the validity of the surrender

of the original lease, *where a new lease is given by the chief landlord.* Such *a surrender and renewal* do not impair any right or interest of the chief landlord, his lessee or the holder of an under-lease, under the original lease." (Italics mine.)

The effect of these provisions is to preserve the obligations of sublessees where the tenant surrenders the original lease and receives a new lease in return. To this extent the statute introduced a change in the existing law. (Compare *Coe* v. *Hobby, supra.*) But the statute does not affect the obligations of a sublessee except under the special circumstances which concededly do not exist here. Indeed, it must be evident that when the Legislature enacted these provisions, limited to instances where there was a "surrender *and* renewal," it recognized that a surrender without renewal would "impair" the right to enforce an underlease and that it indicated as clearly as could be that this condition should remain unchanged except as thus expressly modified.

It need only be added that this would not deprive the landlord of the right to maintain summary proceedings against the undertenant or to recover for use and occupation if he has remained in possession after the surrender without payment of rent. (*Christatos* v. *United Cigar Stores Co. of America,* 144 Misc. 322.) It may further be observed that attornment by the undertenant with knowledge of the facts would undoubtedly constitute a binding election on his part to affirm the continued existence of the lease. (Compare *Rhinelander Real Estate Co.* v. *Cammeyer,* 216 App. Div. 299.)

For these reasons I am of opinion that the order appealed from should be reversed, with twenty dollars costs and disbursements, and the motion denied.

Order affirmed, with twenty dollars costs and disbursements.