OPINION OF THE COURT
Charles E. Ramos, J.
This holdover proceeding involves the questions of what is an enforceable lease or sublease and what are the rights of a subtenant in the event of the termination of the prime lease.
The petitioner, Barbara Levchuk, seeks a final judgment in her favor awarding her possession of the subject residential apartment and the issuance of a warrant of eviction to remove, the respondent, Rudolph Briksza.
According to the amended petition the respondent was licensed by the petitioner to enter into possession of the apartment for the period commencing October 26,1983 and terminating on November 30, 1983. It is further alleged that the respondent continues in possession of the premises after the expiration of said term, without legal right and without permission of the petitioner.
*370 The respondent contends that there is a valid sublease agreement entered into by the parties, covering the period commencing June 1, 1983 and expiring on June 1, 1986 and that this agreement remains in force despite the fact that the premises were converted to cooperative ownership in January of 1984.
REQUISITES FOR A VALID LEASE
According to subdivision 2 of section 5-703 of the General Obligations Law “[a] contract for the leasing for a longer period than one year * * * of any real property * * * is void, unless the contract or some note or memorandum thereof, expressing the consideration, is in writing [and] subscribed by the party to be charged”. The respondent offered a document, signed by the petitioner and admitted into evidence which reads as follows: “I, Barbara Levchuk, have agreed to sublet my apartment at 428 E. 85 Street, Apartment IB to Rudy Briksza from June 1, 1983 to June 1,1986. The agreement is that he will pay me the appropriate rent plus $100 additional each month by the first of each month.” (Emphasis added.) “It is necessary to the formation of a lease that all the essentials of a contract be present”. (1 Rasch, NY Landlord & Tenant Summary Proceedings, [2d ed], § 17, p 22.) These essentials include the parties to the lease, the subject matter of the lease, the term during which the lease is to be in effect, and the rent that is required under the lease. The writing referred to above uses the term “appropriate rent”. According to Rasch (op. cit., vol 1, § 50, p 68) “[a]n agreement for a lease to be enforceable, must, as all contracts, be certain in its terms”. Thus, the initial determination to be made is whether or not the term “appropriate rent” is sufficiently certain so that an enforceable lease may be said to exist. The term “appropriate rent” is at the least somewhat uncertain in its meaning absent reference to the surrounding circumstances of its use.
ADMISSIBILITY OF PAROL EVIDENCE
The paroi evidence rule bars the admission into evidence of conversations, negotiations and agreements made by the parties prior to or contemporaneously with the execution of a written lease for the purpose of varying or contradicting what would otherwise be an unambiguous written lease. (1 Rasch, op. cit., § 119, p 180.) However an exception to the paroi evidence rule exists where the lease is found to be ambiguous as to the meaning of the language employed. Extrinsic evidence is admissible in this limited situation to ascertain the meaning intended by the parties. (1 Rasch, op. cit., § 123, p 186.) Thus, paroi evidence is admissible in the present case for the purpose of *371 interpreting the meaning intended by the parties as to the term “appropriate rent”.
THE CONTENTIONS OF THE PARTIES
It is the petitioner’s contention that the writing offered by the respondent and entered into evidence is not a valid lease. However, the petitioner gratuitously testified as to the meaning of the term “appropriate rent” as used in the writing. The petitioner stated without objection that the “appropriate rent” agreed upon was her cost of carrying the apartment, be it rent, maintenance or cooperative loan amortization, to which would be added the sum of $100.
The respondent contends that the term “appropriate rent” meant the petitioner’s stabilized rent. The respondent asserts that the stabilized rent was to remain the base rent that he would pay even after the demised premises were converted to cooperative ownership, despite the fact that the petitioner’s ’ mortgage and maintenance payments would greatly exceed the stabilized rent plus the $100 that he would pay.
THE SUBLEASE IS VALID
The court concludes that there was a valid sublease and that the “appropriate rent” was petitioner’s “cost”, i.e., rent or as appears below maintenance and amortization.
At the time that the sublease was entered into the petitioner had not yet purchased the subject apartment. The apartment was then subject to rent stabilization. Given the regulatory status of the apartment prior to conversion it is a simple task to determine the “appropriate rent” for the preconversion period. The “appropriate rent” would be the stabilized rent. However, the task of determining the “appropriate rent” after conversion to cooperative ownership and deregulation is somewhat more difficult, but sill ascertainable.
THE SUBTENANCY AND PRIME TENANCY
Once the apartment was converted to cooperative ownership not only was the regulatory status of the apartment changed but the very nature of the petitioner’s tenancy and concomitantly, the respondent’s subtenancy, were altered as well. Prior to the conversion the petitioner was a tenant who sublet her apartment to the respondent. The petitioner was the prime tenantsublessor and the respondent was the undertenant-sublessee. “The basic rule is that a sublease is dependent on and limited by the terms and conditions of the main lease from which it is carved.” (Precision Dynamics Corp. v Retailers Representatives, *372 120 Misc 2d 180, 181.) “When the paramount lease comes to an end * * * the sublease which was carved out of it falls with it.” (1 Rasch, op. cit., § 234, p 299.) Therefore absent any extenuating circumstances, the petitioner’s lease, and with it the respondent’s sublease, would be destroyed upon the apartment’s conversion to cooperative ownership. If the lease and sublease were in fact destroyed then there could not be an “appropriate rent” because there would be no landlord-tenant or sublessor-sublessee relationship. As said above this would be the situation presently existing absent any extenuating circumstances.
However, in this case, given the written sublease agreement and the extrinsic evidence regarding the circumstances surrounding the execution of the same, it is clear that it was within the contemplation of the parties that their agreement would survive the conversion of the apartment to cooperative ownership. The relationship existing after cooperative conversion is ° that of landlord and tenant, with the petitioner former sublessor being the landlord and the respondent former sublessee being the tenant. The “appropriate rent” simply refers to what is now the “appropriate rent”. The “appropriate rent” is the petitioner’s cost of carrying the apartment. Prior to conversion it was her rent as a tenant in a rent-stabilized apartment. After conversion it is maintenance and cooperative loan amortization (to which is added $100).
Accordingly, judgment for the respondent dismissing the petition. Petitioner’s remedy if the “appropriate rent” is not paid is to commence a nonpayment proceeding. Respondent’s lease will expire, by its terms, on June 1, 1986.