**In re 48TH STREET STEAKHOUSE, INC., Debtor.**

**48TH STREET STEAKHOUSE, INC., Plaintiff–Appellee,**

v.

**ROCKEFELLER GROUP, INC., and Rockefeller Center Properties, Defendants–Appellants,**

**I.S.H. Liquidating Corp. and Dornbush Mensch & Mandelstam, Defendants.**

**No. 199, Docket 87–5016.**

United States Court of Appeals, Second Circuit.

Argued Oct. 6, 1987.

Decided Dec. 15, 1987.

Paul I. Marx, New York City (Angel & Frankel, P.C., Bruce Frankel and Peter S. Goodman, New York City, of counsel), for plaintiff-appellee.

Henry J. Bergman, New York City (Bachner, Tally, Polevoy, Misher & Brinberg, of counsel), for defendants-appellants.

Before LUMBARD and ALTIMARI, Circuit Judges, and KAUFMAN, District Judge.*

ALTIMARI, Circuit Judge:

Appellants, Rockefeller Group, Inc. and Rockefeller Center Properties ("the Landlord"), appeal from a decision of the United States District Court for the Southern District of New York, Kevin Thomas Duffy, Judge, which affirmed a grant of summary judgment in favor of 48th Street Steakhouse, Inc. ("48th Street") by the United States Bankruptcy Court for the Southern District of New York, Tina L. Brozman, Bankruptcy Judge. Judge Brozman held that appellants' act of sending a lease termination notice to I.S.H. Liquidating Corp. ("I.S.H."), to which 48th Street's lease had been assigned, was in violation of 48th Street's right to an automatic stay under section 362 of the Bankruptcy Code, 11 U.S.C. § 362. We agree with this conclusion and we affirm the decision of the district court.

## BACKGROUND

In November 1975, 48th Street contracted to purchase a restaurant business located at 10 Rockefeller Plaza, New York City, from Charley O's Corp. ("Charley O's"). The agreement of sale provided for the purchase by 48th Street of Charley O's furniture, fixtures and equipment located at the premises, and the right to use the name "Charley O's." Charley O's had been leasing the premises from Rockefeller Center, Inc. (later re-named Rockefeller Group, Inc.), which terminated its lease with Charley O's and entered into a new lease with 48th Street. 48th Street's lease was dated December 1975, but was not executed until April 1976; the lease term was to expire on September 30, 1994.

In order to finance its purchase of the restaurant, 48th Street executed a promissory note in the amount of $207,289.00, which evidenced its obligation to Charley O's. Charley O's secured this obligation by obtaining a security interest in 48th Street's chattels, fixtures and equipment. In addition, 48th Street assigned its lease of the premises to I.S.H., an affiliate of Charley O's, thus rendering I.S.H. the nominal prime tenant under the lease. The Landlord consented to this assignment.

* Honorable Frank A. Kaufman, Senior Judge of the United States District Court for the District of Maryland, sitting by designation.

Paragraph 6 of the assignment provided that the Landlord would consent to the future reassignment of the lease back from I.S.H. to 48th Street "whenever requested by the Assignee and the Assignor." Such reassignment was to be requested by means of a document entitled "Assignment with Consent and Release." This document provided that the lease was to be reassigned to 48th Street as soon as 48th Street had satisfied all its financial obligations to Charley O's. The "Assignment with Consent and Release" was to be held in escrow until such time as 48th Street's debt to Charley O's was satisfied.

After 48th Street assigned its lease to I.S.H., I.S.H. in turn sub-let the premises to 48th Street, with the Landlord's consent. The sub-lease was coterminous with the escrow agreement, in that it would also terminate upon the satisfaction of 48th Street's debt to Charley O's. 48th Street remained in continuous possession of the premises and pursuant to the terms of the sublease, paid rent directly to the Landlord.

In July of 1983, rent on the restaurant premises was in arrears. That same month, 48th Street and its parent corporation, American Hospitality Management Co. ("American Hospitality"), filed Chapter Eleven bankruptcy petitions. On August 1, 1983, American Hospitality tendered a payment to Landlord on behalf of 48th Street for use and occupation of the premises for the post-petition period of July. That tender was rejected.

In late August 1983, Landlord served I.S.H., the nominal prime tenant, with a notice of default which stated that if the arrears were not paid within five days, Landlord would terminate the lease. I.S.H. did not pay the requested arrears.

48th Street was served with a copy of the default notice and immediately acted to protect its interest in the lease by commencing the instant adversary proceeding on September 1, 1983. 48th Street's complaint requested, among other relief, that the Landlord be enjoined from taking any action with respect to 48th Street's interest in the lease, and that 48th Street be declared the prime tenant under the lease.

That same day, a hearing was held before Bankruptcy Judge Ryan, at which it was learned that the Landlord had already sent a notice of lease termination to I.S.H. dated September 1, 1983. The notice advised I.S.H. that because the arrears had not been paid within five days of the previous default notice, the lease was to be terminated in three days. Following the September 1 hearing, Judge Ryan issued a preliminary injunction which enjoined the Landlord "from interfering with and/or terminating any right, title and interest that the Debtor may enjoy with regard to the lease or premises." This injunction served to stay the effect of the lease termination notice.

In June 1985, 48th Street moved for summary judgment, arguing that the Landlord's sending of the lease termination notice violated the automatic stay provision of the Bankruptcy Code. 48th Street requested a declaration that the lease termination notice was ineffective, and that "upon the payment of all arrears due and owing under the ... Lease and/or Sublease, 48th Street will be the prime tenant under the Lease."

On May 22, 1986, Bankruptcy Judge Brozman issued a decision and order granting 48th Street's motion for summary judgment. *See* 61 B.R. 182 (Bankr.S.D.N.Y. 1986). Judge Brozman held that the 48th Street lease constituted property of the bankrupt estate under 11 U.S.C. § 541, and therefore, the Landlord's attempt to terminate the lease as to I.S.H. violated 48th Street's right to an automatic stay of "any act to obtain possession of property of the estate." 11 U.S.C. § 362(a)(3).

The Landlord appealed Judge Brozman's decision to the District Court for the Southern District of New York, which affirmed the grant of summary judgment in favor of 48th Street.

## DISCUSSION

Throughout this litigation, the Landlord has maintained that I.S.H. was its prime tenant and that 48th Street's only interest in the lease was that of a sublessee. 48th

Street, on the other hand, argues that the assignment of its lease to I.S.H. was intended as collateral, and that 48th Street therefore retained an equitable interest in the lease which was greater than that of a sublessee. Judge Brozman held that even if 48th Street was a "mere sublessee," its interest in the lease would still be protected by the automatic stay because a sublease constitutes property of the bankrupt estate. Judge Brozman then went on to make what appears to be a factual finding that, in any event, the assignment of 48th Street's lease to I.S.H. was indeed intended as collateral.

Because this case came to the court on a motion for summary judgment, however, such fact-finding was inappropriate. On a motion for summary judgment, the court must view the facts and draw all reasonable inferences therefrom in the light most favorable to the non-moving party. *See, e.g., Knight v. U.S. Fire Insurance Co.,* 804 F.2d 9, 10–11 (2d Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Accordingly, for the purpose of this appeal, we accept the Landlord's contention that I.S.H. was its prime tenant, and that 48th Street was a sublessee following the assignment of its lease to I.S.H. We then must consider whether a sublease constitutes property of the bankrupt estate and whether the Landlord's sending of a termination notice to I.S.H. violated the automatic stay with respect to 48th Street.

Section 541 of the Bankruptcy Code, 11 U.S.C. § 541, enumerates the types of property interests which are included in the bankrupt estate. The estate is defined broadly to include "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.* § 541(a)(1).

The courts are in agreement that unexpired leasehold interests, including subleases, constitute property of the bankrupt estate. *See, e.g., In re American International Airways, Inc.,* 44 B.R. 143, 145 (Bankr.E.D.Pa.1984); *In re KDT Industries, Inc.,* 32 B.R. 852, 856 (Bankr.S.D.N.Y.1983); *In re Allan Steaks Corp.,* 22 B.R.

881, 882 (Bankr.D.Mass.1982); *In re Andorra Meat Market, Inc.,* 7 B.R. 744, 745–46 (Bankr.E.D.Pa.1980). *See also* H.R.Rep. No. 595, 95th Cong., 2d Sess. 367, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5963, 6323; S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868 ("debtor's interest in property also includes 'title' to property, which is an interest, just as are a possessory interest, or leasehold interest").

■ Indeed, a mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay. *See, e.g., In re Onio's Italian Restaurant Corp.,* 42 B.R. 319, 320–21 (Bankr.S.D.N.Y.1984); *Matter of GSVC Restaurant Corp.,* 3 B.R. 491, 494 (Bankr.S.D.N.Y.), *aff'd* 10 B.R. 300 (S.D.N.Y.1980).

Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). The Landlord maintains that its sending of the termination notice to I.S.H. did not violate the automatic stay with respect to 48th Street, because termination of I.S.H.'s lease would have had no effect on 48th Street's sublease.

In this contention, the Landlord is simply wrong. As Judge Brozman observed, "it is axiomatic that, under New York law, when a prime lease falls, so does the sublease." 61 B.R. at 189 (citing 34 N.Y.Jur. *Landlord & Tenant* § 270 (1964), and *In re Shoppers Paradise, Inc.,* 8 B.R. 271, 275 (Bankr. S.D.N.Y.1980)). *See also World of Food, Inc. v. N.Y. World's Fair,* 22 A.D.2d 278, 280, 254 N.Y.S.2d 658, 661 (1st Dep't 1964); *Levchuk v. Briksza,* 126 Misc.2d 369, 371–72, 481 N.Y.S.2d 998, 1000–01 (Civ.Court N.Y.Co.1984).

The Landlord asserts that the foregoing proposition is not uniformly correct; rather, it argues, termination of I.S.H.'s lease would have resulted in a "merger" between the estates of Landlord and I.S.H., while leaving 48th Street's sub-lease unimpaired. The cases which Landlord relies upon to support this theory, however, involved in-

stances where the prime tenant surrendered its lease to the landlord pursuant to a separate agreement. *See e.g., Metropolitan Life Ins. Co. v. Hellinger*, 246 A.D. 7, 284 N.Y.S. 432 (1st Dep't 1935), *aff'd*, 272 N.Y. 24, 3 N.E.2d 621 (1936); *see also Precision Dynamics Corp. v. Retailers Representatives, Inc.*, 120 Misc.2d 180, 465 N.Y.S.2d 684 (Civ.Ct.N.Y.Co.1983). These cases do not apply to 48th Street's situation, where the Landlord attempted unilaterally to terminate the prime tenant's lease for non-payment of rent. Under such circumstances, termination of the prime lease results in termination of the sub-lease as well.

■ Because Landlord's attempt to terminate I.S.H.'s lease, if successful, would have resulted in the destruction of 48th Street's subtenancy, Judge Brozman correctly held that Landlord's termination notice violated the automatic stay with respect to 48th Street and was therefore void. *See* 2 L. King, *Collier on Bankruptcy* § 362.11 (15th ed. 1987) ("actions taken in violation of the stay are void and without effect").

As a result of this holding, the Landlord is precluded from taking action against I.S.H. with respect to the lease, even though I.S.H. itself has not filed for bankruptcy. The Landlord argues that although the automatic stay is designed to preserve the debtor's estate, its protection should not extend to non-bankrupt third parties which are somehow related to the debtor.

While it is true that I.S.H. is an incidental beneficiary of our decision, this result is permissible where a non-debtor's interest in property is intertwined, as in the present case, with that of a bankrupt debtor. If action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay. *See In re Bialac*, 712 F.2d 426, 431–32 (9th Cir.1983) (automatic stay prohibited creditor from foreclosing on property in which debtor had right of redemption, even though property was owned by non-bankrupt individuals); *In re Metal Center,*

*Inc.*, 31 B.R. 458, 462 (Bankr.D.Conn.1983) ("the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate").

Finally, 48th Street requests that this court impose sanctions on the Landlord for bringing what 48th Street terms a frivolous appeal. Although we believe that the Landlord's position on this appeal is essentially without merit, we do not consider the appeal to be so frivolous or such an abuse of the judicial process as to warrant the imposition of sanctions.

The decision of the district court is hereby affirmed.