In re 3220 ERIE BOULEVARD EAST, INC., Debtor.

Bankruptcy No. 90–01915.

United States Bankruptcy Court, N.D. New York.

Nov. 1, 1990.

Coulter, Fraser, Bolton, Bird & Ventre (M. Joanne Van Dyke, of counsel), Syracuse, N.Y., for John J. Muraco, Frank J. Muraco, Muraco Trust Associates and MSM Development Co. of Central New York, Inc.

Lee & LeForestier, P.C. (Michael J. O'Connor, of counsel), Troy, N.Y., for debtor.

## MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Bankruptcy Judge.

This contested matter is before the Court by way of a motion to lift the automatic stay filed by John J. Muraco, Frank J. Muraco, Muraco Trust Associates and MSM Development Company of Central New York, Inc. ("Movants") so as to allow the Movants to proceed with state court eviction proceedings with respect to the possession of certain real property by 3220 Erie Boulevard East, Inc. ("Debtor"). Argument was heard on the motion in Syracuse, New York on September 25, 1990 and

the matter was finally submitted for decision on October 3, 1990.

## JURISDICTION

The Court has subject matter jurisdiction of this contested matter pursuant to 28 U.S.C. § 1334(b), § 157(a), (b)(1) and (b)(2)(G).

## FACTS

On January 18, 1980 the Debtor entered into a lease of real property located at 3220 Erie Boulevard East, Syracuse, New York for a term of ten years.[1] The Debtor's business conducted on these premises was known as "Jack Appleseed's Tavern." Beginning sometime in 1989, the Debtor allegedly failed to pay a portion of its rent under the lease with the Movants.[2]

By letter dated March 8, 1990 from Movants to the Debtor, the Movants declared the Debtor to be in default due to the Debtor's failure to pay certain real estate tax amounts due under the lease. (*See* Exhibit E attached to Affidavit of M. Joanne Van Dyke, Esq. sworn to September 10, 1990).

Article VI of the lease entitled "Defaults" sets forth six specified events and provides that "[i]f at any time there shall occur any of the following events ... then the lease term hereby created shall, at the option of the landlord, cease and terminate ... and the Landlord may thereupon proceed to recover possession...." One of the contractual events is the failure to "pay any installment of rent" which remains uncured for five days after written notice thereof. *Id.*

The aforementioned letter dated March 8, 1990 informed the Debtor that more than thirty days had elapsed since the Debtor had received a bill for real estate taxes and that "[i]n the event you shall fail to pay the rent and the taxes due the Landlord, in accordance with the provisions of the Lease, and there occurs a default thereby

---

1. The original lessor of the property to the Debtor was HJS Enterprises. In 1986 the Movants purchased the property from HJS and, therefore, are treated as its lessors herein.

2. Though not specifically alleged in the responding papers, it does not appear that the Debtor was operating any business at the leased premises at the time it filed its petition.

under Article VI of the Lease, please be advised that the Landlord elects to terminate the Lease ... with this letter operating as per terms of the Lease as a notice to quit."

Movants' counsel subsequently mailed to the Debtor a letter dated March 20, 1990 which provided that if the Debtor's failure to pay all taxes due to the landlord continued for a period of thirty days from the notice of default contained in the Movants' previous March 8, 1990 letter, then "your lease will be terminated." The March 20th letter further stated that if the balance due from the Debtor was not paid within thirty days of the March 8, 1990 notice, the Movants would "immediately consider the lease terminated ... [and would] proceed with the necessary proceedings to evict." (*See* Exhibit F attached to Affidavit of M. Joanne Van Dyke, Esq. sworn to September 10, 1990).

Movants thereafter, during May, 1990, commenced summary eviction proceedings against the Debtor in state court. Following a number of adjournments, the matter was tried in Onondaga County Court and judgment was rendered orally from the bench in favor of the Movants at approximately 3:45 p.m. on August 3, 1990. An Order, Judgment and Warrant of Eviction were then submitted to the County Court Judge by the Movants and were signed by him on that same day sometime between 4:20 and 4:35 p.m. (*See* Reply Affidavit of M. Joanne Van Dyke, Esq. sworn to the 21st day of September 1990, paras. 11 and 12). Also on August 3, 1990, the Debtor filed its instant petition for relief under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code"). The petition was time stamped at the time of filing at 4:23 p.m. The Debtor has allegedly appealed the state court Judgment. (*See* Answering Affirmation of Lee & LeForestier, P.C. dated September 18, 1990, para. 7).

Upon the Debtor's subsequent notification to the Movants of the filing of its petition, the Movants withheld service of

the Warrant on the Debtor. The Movants then filed the instant motion to lift the automatic stay to allow them to proceed with the state court eviction procedures.

### ARGUMENTS

The Movants assert that the Debtor's continued nonpayment of amounts due under their lease of the Property to the Debtor is a breach of the lease which results in "irreparable harm and damage" to them.

The Debtor argues that the lease is "the cornerstone of the debtor's Chapter 11 plan" in that its sale or re-letting of the Property at a substantially greater rent will benefit the estate. (*See* Answering Affirmation of Lee & LeForestier, P.C. dated September 18, 1990, para. 4). It argues that, because the state court Order was signed approximately twenty minutes after the petition was filed, the Order is null and void. Even if the Order granting judgment was entered prior to the filing, the Debtor contends, the lease is not terminated until the issuance of the warrant of eviction.

The Movants will be adequately protected, the Debtor argues, in that if its pending motion to assume the Movants' lease pursuant to Code § 365 is successful, any defaults under the lease will be cured.[3]

The Movants argue that the matter has been fully litigated in state court and to re-try the eviction proceeding in this Court would be unfair. They assert that while the lease may be a benefit to the Debtor, the Debtor's failure to pay the amounts due under the lease imposes a great burden on them. At any rate, the Movants contend that the mere fact that the lease would provide a benefit to the estate is not sufficient grounds to allow the Debtor to remain in possession.

### DISCUSSION

The ultimate issue before the Court is whether the Movants have established "cause," pursuant to Code § 362(d)(1), to lift the automatic stay and proceed against

---

**3.** On September 19, 1990 the Debtor filed a motion, made returnable October 23, 1990, to assume the lease under consideration herein.

the Debtor in state court regarding eviction from the Property.[4]

■ Under § 749(3) of the New York Real Property Actions and Proceedings Law (McKinney's 1979) ("NYRPAPL"), the issuance of a warrant of eviction is the judicial act which cancels the lease agreement and annuls the relation of landlord and tenant. The warrant of eviction is issued by the court upon rendering a "final judgment." NYRPAPL § 749(1).

■ In the instant case, there was no valid final judgment or issuance of warrant of eviction. Although the state court ruled in the Movants' favor from the bench, such an oral declaration by a court fails to satisfy the requirement of a "final judgment" as set forth in NYRPAPL § 749(1). Section 2220(a) of the New York Civil Practice Law and Rules ("NYCPLR") allows a prevailing movant sixty days in which to submit an order and secure entry of the order. Unexcused untimeliness in compliance within the allotted time will result in the motion or action being deemed abandoned. *See e.g. Hickson v. Gardner*, 134 A.D.2d 930, 521 N.Y.S.2d 938 (N.Y.App.Div.1987). Thus, an oral disposition from the bench is merely a direction to submit a formal order or judgment and is insufficient to constitute an appealable final judgment. *See Le Glaire v. New York Life Ins. Co.*, 5 A.D.2d 171, 170 N.Y.S.2d 763 (N.Y.App.Div.1958).

■ While the Court lacks documentary evidence consisting of a signed and time stamped state court judgment, and the allegations of the moving papers notwithstanding, it was not disputed by the parties at the September 25, 1990 oral argument that the state court judgment was, in fact, signed after the filing of the Debtor's petition. It is well settled that "[a]s soon as a petition in bankruptcy is filed, the automatic stay provisions of 11 U.S.C. § 362 take effect." *In re Vitreous Steel Products Co.*, 911 F.2d 1223, 1231 (7th Cir.1990). As a consequence, acts undertaken which are stayed pursuant to Code § 362 are void and without effect. *See Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940); *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse Inc.)*, 835 F.2d 427, 431 (2d Cir.1987); *Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin)*, 890 F.2d 123, 125–26 (9th Cir.1989). In the case at bar, therefore, because the state court judgment was actually signed and presumably *entered* after the Debtor's Chapter 11 petition was filed, it never became effective as a matter of law. *See Butler v. Bellwest Management Corp. (In re Butler)*, 14 B.R. 532, 534 (S.D.N.Y.1981).

■ Notwithstanding a valid final judgment and issuance of a warrant of eviction, a debtor continues to possess an interest in leased real property which is protected by the stay pursuant to Code § 362. Because a state appellate court retains the power to vacate the warrant of eviction, the Debtor retains a "residual interest in the lease". *In re B.K.B. Enterprises, Inc.*, 97 B.R. 170, 173 (Bankr.S.D.N.Y.1989). This interest would be part of the debtor's estate and is, therefore, subject to the stay pursuant to Code § 362. *See In re 48th Street Steakhouse Inc.*, 835 F.2d at 430.

■ For the following reasons, however, the Court will not pass upon whether the Debtor was in default under the lease and whether the Movants' actions operated to terminate the lease prior to the date the Debtor's petition was filed.

It appears that sometime during 1989 the Debtor in fact ceased paying to the Movants certain monthly amounts which it considered excessive under the lease. Beginning in January, 1990, several notices to the Debtor regarding their default ensued, two of which are detailed above in *FACTS, supra*, with the March 20, 1990 letter making clear the Movants' intention to consider the lease terminated and to pursue eviction proceedings if the default was not cured. The Movants commenced the eviction proceeding in May, 1990 and a trial on the matter was held on August 3, 1990 at

---

**4.** While the Movants have not specified the section of the Code under which they are moving, the nature of their argument appears to fall within the broad ambit of "cause" under Code § 362(d)(1), and will be treated accordingly herein.

which the Debtor's counsel appeared. Upon considering the arguments and evidence presented at the trial, the state court judge ruled from the bench in favor of the Movants'. Between the judge's oral ruling and the signing and entry of the judgment and issuance of the warrant of eviction, the Debtor filed its Chapter 11 petition.

The Debtor now seeks to bring the lease termination issue before this Court by opposing Movants' lift stay motion, as well as affirmatively moving to assume the very lease which was the focal point of the state court eviction proceeding.

While the filing of a bankruptcy petition pursuant to Chapter 11 of the Code is intended to provide a debtor with protection from the onslaught of its creditors while it attempts to sort out its liabilities and formulate an acceptable plan providing for their payment, it is not intended to provide a debtor with an alternate forum to re-litigate issues which it could have or did litigate in another forum pre-petition. *See generally Packerland v. Griffith Brokerage Co. (In re Kemble)*, 776 F.2d 802, 807 (9th Cir.1985); *Grand Hudson Corp. v. GSVC Restaurant Corp. (In re GSVC Restaurant Corp.)*, 10 B.R. 300 (S.D.N.Y. 1980).

In the instant case, the Debtor had the opportunity to fully litigate its rights under the lease in Onondaga County Court. It was given its "day in court" on the lease termination issue and its rights were determined by the County Court Judge. The filing of the petition some twenty minutes prior to the actual signing of the Order, Judgment and Warrant of Eviction simply stayed what might be considered a ministerial, yet essential, act on the part of the state court.

■ The Debtor has alleged that the lease is the "cornerstone" of its Chapter 11 plan only in the sense that it seeks to "market" the lease either by sale or sublease. Debtor is not operating and apparently does not intend to operate its business from the leased premises in the future.

Debtor alleges that it has filed a notice of appeal of the state court Judgment and it may well prevail at the state appellate court level. This Court is convinced, however, that there is sufficient cause within the meaning of Code § 362(d)(1) for it to modify the stay imposed pursuant to Code § 362(a) to permit the Movants and the Debtor to continue the state court litigation from the point to which it had progressed at 4:23 p.m. on August 3, 1990 to a final conclusion.

In the event that the Debtor is successful in obtaining a final adjudication in state court affirming the existence of the lease as of the moment of filing, this Court will thereafter finally consider Debtor's motion, filed September 19, 1990, to assume the lease, which motion this Court will adjourn pending the final outcome of the state court litigation.

IT IS SO ORDERED.