**Walter P. RICHARD, Plaintiff–Appellee,**

v.

**CITY OF CHICAGO, a Municipal Corporation, Midwest Real Estate Investment Co., a Corporation, Defendants–Appellants.**

No. 86 C 8986.

United States District Court, N.D. Illinois, E.D.

Nov. 23, 1987.

Clay Mosberg, David R. Gray, Chicago, Ill., for Midwest Real Estate Inv. Co.

Bennie W. Fernandez, Oak Park, Ill., for appellee Richard.

Linda Jenkins, Pierce & Associates, Chicago, Ill., for First Family Mortg. Corp.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Midwest Real Estate Investment Co. ("Midwest") appeals the Bankruptcy Court's order declaring null and void the sale of property owned by debtors Walter and Gwendolyn Richard that Midwest purchased at a tax sale. We deny Midwest's appeal because the tax sale violated the automatic stay that attached to the debtors' estate pursuant to 11 U.S.C. § 362(a), when the Richards filed for bankruptcy under Chapter 13. We therefore order the City of Chicago, the party primarily responsible for the violation of the stay, to refund to Midwest the money Midwest paid at the tax sale, and we order Midwest to accept this refund. We further hold invalid the tax deed that Cook County issued based on the voided tax sale.

## FACTS

The material facts are not in dispute. Walter Richard and Gwendolyn Richard filed a joint Chapter 13 petition and plan in November 1980 which effected an automatic stay barring disbursement of their estate. Bankruptcy Judge McCormick found that Midwest, the City of Chicago ("the City")—defendant in the adversary proceeding then before him—and appellee First Family Mortgage Company ("First Family") were scheduled as the Richards' creditors, and that these parties were notified of the stay.[1]

The Richards owned residential property at 9938 South Yale, Chicago on which First Family held a first mortgage lien. In 1980, before the Richards filed for bankruptcy, the City of Chicago levied a special tax assessment on that property. This tax was to be paid in installments over a five-year period beginning in 1980. When the debtors did not make payments in 1980 and 1981 the City assigned the overdue assessment to Cook County ("the County"). Neither the City nor the County filed an assignment of claim with the Bankruptcy Court.

On May 11, 1982, the County sold the overdue special assessment to Midwest at a tax sale. On June 20, 1983, Walter Richard dismissed himself from the joint Chapter 13 petition and on June 24, 1983 refiled a Chapter 13 petition in his name only. The Richards subsequently divorced and, on May 21, 1984, debtor Walter Richard received all title to and interest in the marital residence located at 9938 South Yale.

On January 10, 1985, the County issued a tax deed to Midwest based on the 1982 tax sale and subsequent running of the statutory redemption period. After obtaining the tax deed on March 29, 1985 Midwest sought possession of the 9938 South Yale property and on August 26, 1985 moved for relief from the automatic stay. Richard filed an adversary complaint on September 23, 1985, seeking to void the 1982 tax sale, which the Bankruptcy Judge did on September 24, 1986. He also denied the City's motion to dismiss itself as a defendant in the proceeding. Midwest appeals Judge McCormick's order, asserting jurisdictional and limitations arguments, and claiming that the tax sale was a voidable act which

---

1. Midwest disputes this finding and maintains it had no knowledge of the bankruptcy proceeding. Our review of the Chapter 13 plan supports Midwest's claim. However, Midwest's pri-

or knowledge of the Chapter 13 filing and automatic stay is not relevant to the issue of whether the tax sale is a void or voidable act, *In re Ellis,* 66 B.R. 821, 823 (N.D.Ill.1986).

was ratified when the debtor let lapse the two-year statutory redemption period.

## DISCUSSION

### I. The Tax Sale

In reviewing orders of the Bankruptcy Court we apply the "clearly erroneous" standard to factual questions, but, since the bankruptcy court's decision that the tax sale was void is a legal conclusion, we review this issue *de novo*. *See In re Evanston Motor Co.*, 735 F.2d 1029, 1031 (7th Cir.1984).

■ When a debtor files for bankruptcy under Chapter 13 a stay of all judicial and non-judicial proceedings, with certain enumerated exceptions, automatically attaches to his property. 11 U.S.C. § 362(a) (1979); *Matter of Cash Currency Exchange, Inc. v. Shine*, 762 F.2d 542, 554 (7th Cir.1985). Because the stay becomes effective upon the filing of a bankruptcy petition, no formal notice is required and a stay lasts for the duration of a bankruptcy proceeding absent modification by the Bankruptcy Court. *See* 2 Collier on Bankruptcy ¶ 362.01[3] at 362.22–362.23 (15th ed. 1979). The automatic stay is designed to prevent dismemberment of a debtor's estate, to insure its orderly distribution, *In re LaPorta*, 26 B.R. 687, 690 (Bankr.N.D.Ill.1982), and to allow a debtor the chance to rehabilitate free of any harassment or prejudice that would result from his creditors' pursuit of individual actions. *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984). Additionally, § 362 operates as an injunction against interference with the Bankruptcy Court's jurisdiction over petitioning debtors. *In re Stonegate Security Services,*

*Ltd.*, 56 B.R. 1014, 1019 (N.D.Ill.1986). Thus both the powers of the Bankruptcy Court and the interests of the debtor are implicated by the automatic stay provision.

■ Actions taken in violation of an automatic stay are void, *Kalb v. Feuerstein*, 308 U.S. 433, 438, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940); *Matter of American Central Airlines, Inc.*, 52 B.R. 567, 569 (Bankr.N.D.Iowa 1985); *In re Victoria Grain Co. of Minneapolis*, 45 B.R. 2, 6–7 (Bankr.D.Minn.1984) (citing thirteen cases in accord), regardless of whether the creditor knew of the bankruptcy petition that affected the stay, *In re Ellis*, 66 B.R. 821, 823 (N.D.Ill.1986); *Rhyne v. Cunningham*, 59 B.R. 276, 278 (Bankr.E.D.Pa.1986). Since the stay that attached to the Richards' property was neither vacated nor modified by the Bankruptcy Court when the City assigned the tax assessment to the County or when the County sold the property to Midwest, these actions occurred in violation of the stay [2] and are void *ab initio*, or without legal effect.[3]

In support of its assertion that these acts are not void but instead are voidable and capable of ratification, Midwest cites three cases in which courts have noted that the void *ab initio* rule should not be inflexibly applied. However, these courts applied a flexible approach based on the fact that the bankruptcy case recognizes specific statutory exceptions [4] to the void *ab initio* rule. We do not find that these cases carve out a broad area in which courts generally exercise discretion to proclaim various acts either void or voidable and, since no statutory exception applies here, we reject Midwest's contention.

---

**2.** We note that defendants in the adversary proceeding did not seek relief from the automatic stay before committing acts that violated it. *See Matter of Baldwin–United Corp.*, 52 B.R. 541, 543, 548 (Bankr.S.D. Ohio 1985) (where no relief from stay sought, violations of state are void).

**3.** We are aware that as a court of equity a bankruptcy court must be guided by equitable principles in exercising its jurisdiction. *Matthews v. Rosene*, 739 F.2d at 251. *See also In re Smith Corset Shops, Inc.*, 696 F.2d 971, 977 (1st Cir.1982). In the present case, however, we

find no compelling equitable principles outweighing the bankruptcy court's enforcement of the stay to void the tax sale that occurred less than two years after Richard's Chapter 13 petition was filed.

**4.** One of these statutory exceptions, the good faith purchaser exception embodied in 11 U.S.C. § 549(c), is inapplicable here because the South Yale property is located in the same county in which the bankruptcy case was commenced. *See In re Centre de Tricots De Gaspe*, 782 F.2d 905, 907 (11th Cir.1986).

In *In re Young*, 14 B.R. 809 (Bankr.N.D. Ill.1981), the Bankruptcy Court was confronted with circumstances similar to those presented by the current case. In *Young* the debtors owed the county collector real estate taxes which had been assessed against their property before they filed a Chapter 13 petition. Defendant in that action purchased the debtors' property from the county at a tax sale approximately one month after the debtors filed for bankruptcy. Despite the debtors' failure to include their tax debt in their Chapter 13 plan until four days before the tax sale, the *Young* court held that the sale was void because it violated the stay that had attached automatically upon the debtors' filing of their Chapter 13 petition. *Id.* at 811. The collector argued that the tax sale to collect payment of the pre-petition debt was valid because he never received notice of the Chapter 13 filing. *Id.* The *Young* court held that:

> Knowledge and notice of the bankruptcy proceeding would only become relevant if [the court were faced with] a contempt proceeding based upon a creditor's willful violation of the stay.

*Id.* (citing *In re Eisenberg*, 7 B.R. 683, 686 (Bankr.E.D.N.Y.1980)). Thus the court held notice irrelevant to the issue of whether the sale was void and ordered the county collector to refund to the purchaser the money he had paid for the property at the tax sale. *Young*, 14 B.R. at 811–12. We find the *Young* court's analysis directly controlling here and echo the *Young* court's finding that the tax sale of the Richards' property was void.

■ Midwest argues that the Bankruptcy Court was divested of jurisdiction over the estate when Mr. Richard voluntarily dismissed himself from the Chapter 13 petition. We reject this argument for two reasons: first, the tax sale occurred prior to Mr. Richard's voluntary dismissal from his original Chapter 13 petition, and this subsequent dismissal does not resurrect a sale that is legally void. Second, as the Bankruptcy Court recognized, during the time of Mr. Richard's dismissal, Mrs. Richard's Chapter 13 petition, and the automatic stay, remained in effect. Further, the

Bankruptcy Code permits bankruptcy courts to take certain actions to meet the goals of the Bankruptcy Code. The Bankruptcy Court has broad power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of [the bankruptcy] title." 11 U.S. C. § 105(a). *See* 2 *Collier on Bankruptcy*, ¶ 362.02 at 362.27–362.28. Even if Walter Richard's dismissal somehow closed his joint case, the Bankruptcy Code specifically provides that bankruptcy courts have the power to reopen a case to "accord relief to the debtor or for other cause." 11 U.S.C. § 350(b). *See also Vining v. Ward*, 60 B.R. 660, 662–23 (Bankr.W.D.La.1986) ("the question of whether to reopen a bankruptcy proceeding lies, to a large extent, within the sound discretion of the Bankruptcy Court"). Thus, the Bankruptcy Court's enforcement of the Code's stay provisions is affirmed.

## II. Time Bar

Midwest argues that because Richard failed to file his adversary complaint within two years after the tax sale, 11 U.S.C. § 549 and *laches* bar him from seeking to set the sale aside.

### A. § 549

■ Section 549 of the Bankruptcy Code limits the rights of parties to commence a proceeding to set aside a transfer of property to the earlier of: "(1) two years after the date of the transfer sought to be voided; and (2) the time the case is closed or dismissed." 11 U.S.C. § 549(d). Section 549 applies only to transfers of property and, because we have determined that the tax sale was void and no property was transferred, this section is inapplicable. At most, the County could only transfer a tax assessment claim against the Richard estate. *See In re Young*, 14 B.R. at 812. "Under Illinois law a tax sale does not pass legal or equitable title to the purchaser." *Id.* Thus, the Richard residence was not transferred by the tax sale; rather, a claim against the property was transferred and, since the City never filed an assignment of claim in Bankruptcy Court, even this as-

signment to the County violated the automatic stay.

### B. Laches

█ Midwest asserts that Richard's action should be barred by *laches* because Richard waited until more than 42 months after the tax sale to file a complaint and during these months Richard did not contend with the debt he had incurred as the result of the special tax assignment. First Family argues that Richard did arrange to cure his debt when he filed his second Chapter 13 petition, therein listing the City as a creditor. First Family notes that Richard's plan was confirmed without objection by the City and, as evidence of Richard's good faith in paying off his debt, First Family notes that, when the City failed to file its claim, Richard filed a claim on its behalf. We agree with First Family and note that the Bankruptcy Code allows the debtor's Chapter 13 plan to provide a legitimate method of debt payment. Accordingly, we reject Midwest's assertion that, because Richard "paid nothing to satisfy [his debt]," he simply "did not deal with it," because Chapter 13 contemplates alternative methods of debt payment. Moreover, because equitable considerations here weigh in favor of Richard, this is not a case where the Bankruptcy Court should have suspended the stay (and it did not do so). *Compare Matthews v. Rosene*, 739 F.2d at 251 (where equitable considerations weigh heavily in a creditor's favor automatic stay may be suspended). Richard's Chapter 13 petitions in 1980 and 1983 list the City as a creditor, thereby indicating he either was unaware of the tax sale or at least did not acquiesce in the sale of his property to Midwest.

### III. Tax Deed

█ Midwest should have sought modification of the stay in the Bankruptcy Court before petitioning the County for the tax deed. Once the Richards filed for bankruptcy and the stay took effect, the Bankruptcy Court, not Cook County, had exclusive jurisdiction over the property of the Richard estate. The fact that Midwest obtained a tax deed does not prevent this court from assessing the validity of the underlying tax sale upon which the deed is based. Since the underlying sale, conducted in violation of § 362, is void, the County had no property to transfer to Midwest, and we find the deed invalid.

### CONCLUSION

For the foregoing reasons we affirm the conclusions of the Bankruptcy Court. The City of Chicago is ordered to refund to Midwest the money paid for the Richard property at the tax sale. First Family's mortgage lien on the property is hereby reinstated.