**In re William B. SHAMBLIN; Grace G. Shamblin, Debtors.**

**PHOENIX BOND & INDEMNITY COMPANY; Stanford D. Marks; Debois Investment Group, Inc., Appellants,**

v.

**William B. SHAMBLIN; Grace Shamblin, Appellees.**

**No. 88–5840.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1989.

Decided June 30, 1989.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 22, 1989.

---

**1.** 114 *Cong.Rec.* 14388 (daily ed. May 22, 1968)    (statement of Rep. Sullivan).

Russell H. Rapoport, Encino, Cal., for appellants.

Gerard C. Heldrich, Jr., Chicago, Ill., for appellees.

Before WRIGHT and FARRIS, Circuit Judges, and SMITH,* District Judge.

EUGENE A. WRIGHT, Circuit Judge.

Phoenix Bond & Indemnity Company, Stanford D. Marks, and DeBois Investment Group, Inc., appeal the decision of the Bankruptcy Appellate Panel. The panel reversed the bankruptcy court's refusal to set aside the tax sale of Grace Shamblin's real property. The panel also granted the tax sale purchaser a lien on the property to the extent of present equivalent value given. We reverse the panel's grant of a lien to the tax sale purchaser. We affirm the panel's decision in all other respects.

* The Honorable Fern M. Smith, United States District Judge for the Northern District of Cali-

## FACTS

Grace and William Shamblin filed a voluntary Chapter 11 bankruptcy petition in California on February 2, 1982. When the Shamblins filed for bankruptcy, Grace Shamblin owned an apartment building in Cook County, Illinois, on which she owed back taxes. The Shamblins failed to notify the Cook County Recorder's Office of their bankruptcy, although they later amended their bankruptcy schedule to include the Cook County Assessor as a creditor.

Stanford D. Marks is principal shareholder and principal operating officer of Phoenix Bond & Indemnity. Marks is also the managing officer and a director of DeBois Investment Group, Inc. The two firms share office space.

On February 22, 1982, the Circuit Court of Cook County entered judgment against Grace Shamblin's apartment building for back taxes. The Cook County Treasurer conducted a tax sale on May 19, 1982. Phoenix Bond & Indemnity paid $24,430.85 in back taxes, interest, and costs and received a Certificate of Purchase. Neither the Cook County officials nor Phoenix knew of the Shamblins' bankruptcy at that time.

A Phoenix employee received notice of the Shamblins' bankruptcy no later than May 22, 1984. Illinois law provides a two year redemption period for property sold at tax sales. This period expired on May 21, 1984. On May 22, 1984, Phoenix assigned its Certificate of Purchase to Debois. After discovering the pending bankruptcy, the Cook County state's attorney demanded that DeBois return the Certificate of Purchase. DeBois refused. On May 30, 1984, Phoenix, through Stanford Marks, filed an application for an order directing the county clerk to issue a tax deed. Although it is unclear exactly when Marks personally received notice of the bankruptcy, he knew unequivocally of the Shamblins' bankruptcy by June 25, 1984, when he received the Shamblins' complaint in their bankruptcy court action to set aside the tax

fornia, sitting by designation.

sale. Nevertheless, on July 3, 1984, when Marks argued on behalf of the Phoenix/DeBois tax deed in Cook County Circuit Court, he informed the court of the Shamblins' possible bankruptcy, but said he was speaking from "second-hand information." The tax deed was issued to DeBois on July 6, 1984.

The Shamblins filed this action in bankruptcy court on June 13, 1984 requesting that the court set aside the tax sale. Phoenix and Marks filed a joint answer on July 18, 1984. The bankruptcy court refused to set the sale aside, holding that the Shamblins' action was untimely under 11 U.S.C. § 549(d)(1). The court held also that even though the sale violated the automatic stay of 11 U.S.C. § 362, the sale was voidable only during the two year redemption period for tax sales under Illinois law. The bankruptcy appellate panel reversed, holding that both the tax sale and the tax deed violated the automatic stay and were therefore void. Finding that Phoenix was a good faith purchaser for value, however, the panel granted Debois, Phoenix's successor in interest, an 11 U.S.C. § 549(c) lien against the property.

## I. *Mootness*

■ Phoenix, Marks, and DeBois argue that the Shamblins' failure to obtain a stay pending appeal from the bankruptcy court order makes the appeal moot. "Bankruptcy's mootness rule applies when an appellant has failed to obtain a stay from an order that permits a sale of a debtor's assets." *In re Onouli–Kona Land Co.,* 846 F.2d 1170, 1171 (9th Cir.1988). However, the rule operates only when a purchaser bought an asset in good faith. *Id.* at 1173. Lack of good faith includes fraudulent behavior or an attempt to take unfair advantage. *See id.; In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985).

The tax deed was not obtained in good faith. Phoenix, Marks, and DeBois all had notice of the bankruptcy before the tax deed proceeding. They refused to return the Certificate of Purchase to Cook County authorities, they did not attempt to resolve the possible violation of the bankruptcy stay until after the deed was issued, and they made misleading statements to the court to obtain the order to issue the deed. The mootness rule does not apply.[1]

## II. *Section 362 Automatic Stay*

### A. The May Tax Sale

■ The BAP held correctly that the tax sale was void from the outset. 11 U.S.C. § 362 provides that a petition in bankruptcy operates as a stay on any act to create, perfect, or enforce any lien against property of the bankruptcy estate. Judicial proceedings in violation of this automatic stay are void. *In re Stringer,* 847 F.2d 549, 551 (9th Cir.1988). In *Kalb v. Feuerstein,* 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940), several mortgagees sought to confirm a sheriff's sale of a farm owned by persons with petitions pending in bankruptcy court. The Court stated:

> Because that State court had been deprived of all jurisdiction or power to proceed with the foreclosure, the confirmation of sale, the execution of the sheriff's deed, the writ of assistance, and the ejection of appellants from their property— to the extent based upon the court's actions—were all without authority of law.

308 U.S. at 443, 60 S.Ct. at 348.[2] We decline to depart from this well established rule.

Numerous federal courts have followed *Kalb* and held tax and foreclosure sales in violation of the automatic stay to be void. *See Richard v. City of Chicago,* 80 B.R. 451, 453 (N.D.Ill.1987) (Illinois tax sale); *In re Greer,* 89 B.R. 757, 759 (Bankr.S.D.Ill. 1988) (Illinois tax sale); *In re Young,* 14 B.R. 809, 811 (Bankr.N.D.Ill.1981) (Illinois tax sale); *cf. In re Dennis,* 14 B.R. 125, 126–27 (Bankr.E.D.Pa.1981) (sheriff's sale under Pennsylvania law). We agree.

---

1. The mootness rule also does not apply to the May tax sale because of a two-year redemption period under Illinois law. *See In re Onouli–Kona Land Co.,* 846 F.2d at 1173 ("To the extent that a sale is subject to rights of redemption, the sale is not truly final.").

2. The case arose under the predecessor statute to 11 U.S.C. § 362(a).

Appellants Phoenix, Marks and DeBois argue that the bankruptcy court retroactively annulled the stay, thereby validating the tax sale. The bankruptcy court judgment discusses annulling the automatic stay, but the court's decision appears to rest on 11 U.S.C. § 549(d)(1) and the lapse of the two-year redemption period.

▮▮▮ Even if the bankruptcy court had annulled the stay retroactively, the BAP correctly held that the court would have abused its discretion by doing so. We need not decide whether equitable principles may, in a proper case, justify retroactive annulment of the automatic stay.[3] In this case, equity favors enforcement rather than annulment of the stay. Any equitable exception to the automatic stay should be narrow and applied only in extreme circumstances. See, e.g., Matthews v. Rosene, 739 F.2d 249, 251 (7th Cir.1984) (refusing, due to laches, to nullify a nearly three-year-old state court order declaring the validity of a land sale contract).

The appellants' behavior regarding the tax deed proceeding borders on bad faith. The equities therefore favor the Shamblins. Appellants claim that the stay should be annulled retroactively for purposes of the tax sale alone, which they claim was accomplished in good faith. However, issuance of the tax deed was inextricably intertwined with the tax sale proceeding. We decline to view separately the behavior surrounding these two events.

B. The Tax Deed Proceeding

▮▮ The BAP correctly held that the tax deed proceeding was void due to the invalid tax sale. We agree with the analysis of this issue in Richard v. City of Chicago, 80 B.R. at 452–53. The facts in Richard were similar to this case and, like this case, Richard involved Illinois law. In Richard the purchaser argued that the tax sale was a voidable act ratified when the debtor let the two-year statutory redemption period lapse. The court rejected this argument, holding the tax sale void. Id. at 453. It further held invalid the tax deed issued because of the void tax sale. Id. at 455; see also In re Young, 14 B.R. at 812 (enjoining purchaser at tax sale from seeking issuance of tax deed because sale, conducted in violation of automatic stay, was null and void); cf. In re Wheeler, 5 B.R. 600, 603–04 (Bankr.N.D.Ga.1980) (holding delivery of deed, acceptance of check, and recording of deed all void actions and without legal effect) (Georgia law).

The decisions cited by Phoenix, Marks, and DeBois and relied on by the bankruptcy court involve facts different from this case. All involve situations where the bankruptcy petition was filed during the statutory redemption period. See, e.g., In re Tynan, 773 F.2d 177, 179 (7th Cir.1985) (Wright, J.); In re Martinson, 731 F.2d 543, 544 (8th Cir.1984); Johnson v. First Nat'l Bank, 719 F.2d 270, 272 (8th Cir. 1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984); In re Tabor Enters., Inc., 65 B.R. 42, 44 (Bankr.N.D. Ohio 1986) (under Illinois law). The Shamblins filed their petition well before the tax sale occurred.

The equities surrounding the tax deed proceeding also weigh against the appellants. They could have sought relief from the automatic stay before committing acts that violated it. See Richard, 80 B.R. at 453 n. 2, 455. Instead, they refused to return the Certificate of Purchase, continued with the tax deed proceeding, and misled the court regarding the bankruptcy.

III. Section 549

▮▮ Appellants claim that, under 11 U.S.C. § 549, the tax sale should be allowed to stand despite violation of the automatic stay. 11 U.S.C. § 549(a) states a

---

3. Whether the bankruptcy court may annul the automatic stay retroactively is an open question in this circuit. Compare In re Mellor, 734 F.2d 1396, 1402 (9th Cir.1984) ("[W]e do not reach the serious question which is presented where a bankruptcy court purports to annul an automatic stay in order to attempt retroactively to validate a void state court judgment.") with Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1425 (9th Cir.1985) ("Algeran's position that an automatic stay cannot be lifted so as to validate a sale made while the stay was enforced, is without merit.").

general rule permitting the trustee in bankruptcy (or debtor-in-possession) to avoid certain transactions.[4] It provides:

Postpetition transactions.

(a) Except as provided in subsection (b) and (c) of this section, the trustee may avoid *a transfer of property of the estate:*

(1) that occurs after the commencement of the case; and ...

(2) ... that is not authorized under this title or by the court.

(emphasis added). The remaining subsections provide exceptions to the general rule that unauthorized transfers of property may be avoided. Appellants claim the tax sale falls within the exceptions in § 549(c) and (d). Subsection (c) provides an exception for certain good faith purchasers. When the good faith purchaser has paid less than present fair equivalent value for the property, subsection (c) grants the purchaser a lien on the property to the extent of present equivalent value given. Subsection (d) precludes the commencement of § 549 actions beyond the earlier of two years after the date of the transfer sought to be avoided and the time the case is closed or dismissed.

Section 549 does not apply.[5] The tax sale as conducted under Illinois law was not a "transfer of property of the estate" under § 549.[6] *See Richard,* 80 B.R. at 454–55 (tax sale does not transfer property, but a claim against the property); *In re Young,* 14 B.R. at 812 (tax sale transfers only a chose in action) (both cases constru-

ing Illinois law). Because an Illinois tax sale gives the purchaser only a lien on the property, *see Cook County Collector v. ABA Gen. Contractors & Businesses, Inc.,* 135 Ill.App.3d 901, 90 Ill.Dec. 542, 547, 482 N.E.2d 361, 366 (1985), the purchaser does not obtain a transfer of property of the estate, but obtains only a claim against it.[7] Because the tax sale was not a "transfer of property of the estate" under subsection (a), none of the provisions of § 549 apply. The exceptions to § 549, including the provision granting a lien to certain good faith purchasers, cannot, therefore, apply.

CONCLUSION

The tax sale and subsequent tax deed violated the automatic stay and are void. Section 549 does not apply to the tax sale because it is not a "transfer of property of the estate" under subsection (a). Because we conclude that § 549 does not apply, we REVERSE the BAP's determination that DeBois has a lien on the subject property under § 549(c). We AFFIRM the panel's decision in all other respects.

---

**4.** Mrs. Shamblin, a debtor-in-possession, is regarded as a trustee for § 549(a) purposes. *See In re Dant & Russell, Inc.,* 853 F.2d 700, 703 n. 2 (9th Cir.1988).

**5.** The Shamblins argue that § 549 should not apply because the tax sale and tax deed issuance are void for violating the automatic stay. Because we decide that § 549 does not apply for other reasons, we need not resolve that difficult question. *Cf. In re Brooks,* 871 F.2d 89, 90 n. 1 (9th Cir.1989). We also do not address whether a party may use § 549 as a defense where the trustee or debtor-in-possession has not raised that section as a basis for avoiding a post-petition transaction.

**6.** The Code in effect at the time of this case defined "transfer" as:

every mode, *direct or indirect,* absolute or conditional, voluntary or involuntary, of *disposing of or parting with property or with an interest in property,* including retention of title as a security interest. (emphasis supplied)

**7.** This court has consistently treated the creation of liens on the debtor's property as a transfer. *See, e.g., In re Wind Power Systems, Inc.,* 841 F.2d 288, 291–92 (9th Cir.1988); *Bass v. Stodd,* 357 F.2d 458, 464–65 (9th Cir.1966). These cases, however, define "transfer" in the context of *pre*-petition, as opposed to *post*-petition, transactions. The Shamblins and their creditors were fully protected against the post-petition creation of a lien under § 362(a)(4). "Transfer" under § 549, therefore, need not include the lien created by the Illinois tax sale.