NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | BAP No. NV-12-1547-CoDKi |
| NORMA CERALDE, AKA Michael A. Henry, AKA Nolan A. Smith, | Bk. No. NV-11-24631-BTB |
| Debtor. | |
| NOLAN A. SMITH, | |
| Appellant, | |
| v. | **MEMORANDUM DECISION**[1] |
| THE BANK OF NEW YORK MELLON, FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-22, Mortgage Pass-Through Certificates, Series 2007-22, | |
| Appellee. | |

Argued and Submitted on July 19, 2013
at Las Vegas, Nevada

Filed - August 6, 2013

Appeal from the United States Bankruptcy Court
for the District of Nevada

Honorable Bruce T. Beesley, Bankruptcy Judge, Presiding

_____

Appearances:    Jeffrey S. Yong, Esq. of Alexander & Yong argued
                for Appellant, Nolan A. Smith; and Chelsea A.
                Crowton, Esq. of Wright, Finlay & Zak, LLP argued
                for Appellee, The Bank of New York Mellon.

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8013-1.

Before: COLLINS,[2] DUNN and KIRSCHER, Bankruptcy Judges.

## INTRODUCTION[3]

This involuntary individual chapter 7 bankruptcy involves a dispute between the debtor and the secured lender holding a promissory note and deed of trust secured by real property. The secured lender commenced and completed a trustee's sale of the property postpetition and then filed a motion to retroactively annul the automatic stay and validate the postpetition foreclosure of its collateral.

The bankruptcy court entered an order granting the secured lender's motion to annul the stay and then promptly dismissed the chapter 7 proceedings. Debtor Smith appealed the bankruptcy court's order annulling the stay. We AFFIRM the bankruptcy court's order.

## STATEMENT OF FACTS

The debtor in this case is apparently known by many different names, including: Nolan A. Smith, Nolan A. Smith, Jr., Nolan Shaheed (Smith), Norma Ceralde and Michael Henry ("Debtor"). Using the name Nolan A. Smith, Jr., the Debtor executed a Promissory Note secured by a Real Property Deed of Trust upon property located in Pasadena, CA ("Property"). The

---

[2] Hon. Daniel P. Collins, Bankruptcy Judge for the District of Arizona, sitting by designation.

[3] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

2

Bank of New York Mellon, FKA The Bank of New York, as Trustee for the Certificateholders of CWALT, Inc., Alternative Loan Trust 2007-22, Mortgage Pass-Through Certificates, Series 2007-22 ("BNYM"), is the holder of the Promissory Note and Deed of Trust.

Alleged creditors Dex Enterprise, Advant Co, and On-The-Go ("Petitioning Creditors") filed the instant chapter 7 involuntary petition on September 16, 2011, listing "Norma Ceralde aka Michael Henry aka Nolan A. Smith" as the Debtor. The Property and associated loan owed to BNYM were not listed in bankruptcy schedules, nor was BNYM listed on a master mailing list.[4]

Prior to the filing of the involuntary bankruptcy case, the Debtor defaulted on the loan and BNYM commenced foreclosure proceedings on the Property. BNYM conducted a private foreclosure sale of the Property on September 16, 2011, the same day the Debtor was placed into involuntary bankruptcy. After learning of this involuntary bankruptcy case, on November 21, 2011, BNYM recorded a notice of rescission, rescinding the foreclosure of the Property.

Less than two months later, BNYM commenced a second private foreclosure, without seeking relief from the automatic bankruptcy stay. A notice of sale was recorded on January 6, 2012, and a trustee's sale of the Property was conducted on January 30, 2012. BNYM then filed an unlawful detainer action against the Debtor in Los Angeles County Superior Court to gain possession of the

---

[4] No bankruptcy schedules or statements were ever filed nor was an order for relief ever entered by the court in this involuntary case. Further, no master mailing list was ever filed with the bankruptcy court.

3

Property. BNYM obtained a default judgment in that action.

On May 8, 2012, the Debtor filed a voluntary chapter 13 bankruptcy in California under the name "Nolan Shaheed (Smith)." Less than a month later, that case was dismissed for failure to timely file all required documents under Rules 1007 and 3015(b).[5] The Debtor retained counsel, Jeffrey Yong ("Yong"), to combat BNYM's state court eviction action. Yong notified BNYM of the instant involuntary bankruptcy proceeding and requested that BNYM's state court action be dismissed.

The Debtor filed an action in Los Angeles County Superior Court on May 29, 2012 seeking injunctive relief, declaratory relief and to quiet title on the Property.

On June 20, 2012, BNYM filed a motion in the involuntary bankruptcy case requesting annulment of the automatic stay and validation of its postpetition sale of the Property ("Motion to Annul"). The Motion to Annul alleged the stay should be annulled because BNYM had not received notice of the Debtor's bankruptcy until just before its motion to annul. BNYM also alleged the Debtor committed fraud. The Debtor responded with an objection alleging that BNYM had notice of the bankruptcy when it commenced the postpetition foreclosure of the Property. The bankruptcy court held a hearing on the Motion to Annul on July 24, 2012 ("July Hearing").

### 1. July Hearing on the Motion to Annul

At the July Hearing, the bankruptcy court expressed its

---

[5] Bankruptcy Case No. 2:12-bk-26176, United States Bankruptcy Court for the Central District of California (dismissed on June 1, 2012). See also Debtor's Declaration dated July 5, 2012.

4

suspicion that the involuntary bankruptcy case was a fraudulent bankruptcy filing. The bankruptcy court reasoned that the Petitioning Creditors failed to appear at any hearing or take any action in this case. Moreover, it appeared to the court that the case may have been filed under aliases of the Debtor, "Norma Ceralde aka Michael Henry aka Nolan A. Smith."

The bankruptcy court issued an order requiring the Petitioning Creditors to appear and show cause why the involuntary bankruptcy case should not be dismissed. The hearing on BNYM's Motion to Annul was continued until October 2, 2012 ("October Hearing").

### 2. Debtor's Supplemental Opposition

Prior to the October Hearing, the Debtor filed his Supplemental Opposition to the Motion to Annul ("Supplemental Opposition"). The Supplemental Opposition references the deposition of Christina Balandran ("Balandran"), the Person Most Knowledgeable at ReconTrust Company, the foreclosure trustee and agent of BNYM that conducted the foreclosure sale of the Property. The deposition transcript reveals that, on September 16, 2011 (the date the involuntary petition was filed), a ReconTrust technician received notification of a bankruptcy filing, including the Nevada involuntary bankruptcy case number, by a "Nolan Shaheed," but ReconTrust proceeded with the foreclosure because the alleged debtor was named "Nolan Shaheed," not "Nolan Smith." Ms. Balandran also testified that another ReconTrust technician received notification of the instant bankruptcy on October 14, 2011 and, in turn, notified the loan servicer, Bank of America, of the bankruptcy. On November 10,

5

2011, Bank of America ordered ReconTrust to rescind the foreclosure sale conducted on September 16, 2011 because of the instant bankruptcy filing.

### 3. October Hearing on the Motion to Annul

The Petitioning Creditors did not appear at the order to show cause October Hearing. The bankruptcy court acknowledged after reading the Supplemental Opposition that BNYM "may well have had notice of the filing, at least constructive notice." October 2, 2012 Hr'g Tr., at 4:2-3. Regardless, the bankruptcy court found that the case should be dismissed, noting the Petitioning Creditors failed to respond to the Order to Show Cause or appear at the hearing. Counsel for the Debtor consented to dismissal of the case and suggested that dismissal "makes the motion to annul moot." October 2, 2012 Hr'g Tr., at 4:25, 5:1. However, counsel for BNYM urged the court to also grant its Motion to Annul to aid it in connection with defending against the Debtor's California state court action seeking to set aside the sale of the Property based on BNYM's alleged violation of the bankruptcy stay. The bankruptcy court granted the Motion to Annul and ordered that the involuntary bankruptcy case be dismissed. The order granting the Motion to Annul was entered on October 17, 2012. The order dismissing the bankruptcy was entered on October 29, 2012. The Debtor timely appealed the order annulling the automatic stay.[6]

### 4. Motion for Stay Pending Appeal and Hearing

The Debtor filed a motion for stay pending appeal to

---

[6] The Debtor did not appeal the bankruptcy court's order dismissing the involuntary chapter 7 bankruptcy case.

6

prevent an eviction from the Property. BNYM objected to the motion and the Debtor filed a reply to BNYM's opposition.

On December 18, 2012, the bankruptcy court held a hearing on the motion for stay pending appeal and again noted this appeared to be a fraudulent bankruptcy because none of the Petitioning Creditors appeared at the October Hearing pursuant to the Order to Show Cause. The Debtor, in turn, re-asserted his argument that there was no basis to annul the stay because BNYM had notice of the bankruptcy case. The bankruptcy court stated that the Debtor was not harmed because the bankruptcy court would have very likely granted relief from the stay if BNYM moved for relief prior to initiating foreclosure. Judge Beesley further explained why he was suspicious of the Debtor in this case:

> Your client has lived in this house for over two years without paying any fees. It appears to me that there was a fraudulent bankruptcy filing. Now, there's no connection to your client as you say in the fraudulent bankruptcy filing, but the only person who benefitted from the fraudulent involuntary is your client. Nobody else.

December 18, 2012 Hr'g Tr., at 9:10-16.

Because the balance of harm favored BNYM, the bankruptcy court denied Debtor's motion for stay pending appeal.[7]

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (G), (I) and (J). "Orders granting or denying relief from the automatic stay are deemed to be final orders." Nat'l Env't Waste Corp. v. City of Riverside (In re Nat'l Env't Waste Corp.), 129 F.3d 1052, 1054 (9th Cir.

[7] BNYM noted at oral argument on appeal that the Debtor has not yet been evicted from the Property.

7

1997) (citing <u>Benedor Corp. v. Conejo Enters., Inc. (In re Conejo Enters., Inc.)</u>, 96 F.3d 346, 351 (9th Cir. 1996)). The Panel has jurisdiction under 28 U.S.C. § 158.

**ISSUE**

Was it an abuse of the bankruptcy court's discretion to annul the stay in this case?

**STANDARD OF REVIEW**

The standard of review of a motion to annul the automatic stay is abuse of discretion. <u>Mataya v. Kissinger (In re Kissinger)</u>, 72 F.3d 107, 108 (9th Cir. 1995). "An abuse of discretion occurs (a) if the [trial] court makes legal error by identifying the incorrect legal rule or (b) if the [trial] court's application of the correct legal standard was '(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record.'" <u>United States v. Anekqu</u>, 695 F.3d 967, 978 (9th Cir. 2012) (quoting <u>United States v. Hinkson</u>, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

Pursuant to § 362, when an involuntary bankruptcy petition is filed under § 303, an automatic stay is imposed which prohibits all acts that may affect property of the bankruptcy estate. The automatic stay is designed to protect debtors from their creditors while bankruptcy proceedings are under way. <u>Schwartz v. United States (In re Schwartz)</u>, 954 F.2d 569, 571 (9th Cir. 1992). The stay also "protect[s] creditors from the 'race of diligence,' in which those who acted first would receive payment 'in preference to and to the detriment of other

8

creditors.'" In re Nat'l Env't Waste Corp., 129 F.3d at 1054 (quoting H.R.Rep. No. 95-595, at 340 (1978)). A debtor is equally protected by the automatic stay regardless of whether the bankruptcy is voluntary or involuntary.

Actions taken in violation of the automatic stay are void. However, "§ 362(d) gives [a bankruptcy] court the power to ratify retroactively any violation of the automatic stay which would otherwise be void." In re Schwartz, 954 F.2d at 573. "Whether to grant retroactive relief from the automatic stay under § 362(d) is a decision committed to the discretion of the bankruptcy court." In re Williams, 323 B.R. 691, 700 (9th Cir. BAP 2005) (citing In re Nat'l Env't Waste Corp., 129 F.3d at 1054).

### 1. Applicable Standard for Stay Annulment

The standard for annulling the stay has been stated differently by different courts in the Ninth Circuit. Some cases such as Phoenix Bond & Indemnity Co. v. Shamblin (In re Shamblin), 890 F.2d 123 (9th Cir. 1989); and In re Kissinger, 72 F.3d 107 (9th Cir. 1995) appear to suggest that retroactive annulment should be exercised only in "extreme circumstances." In re Shamblin, 890 F.2d at 126 (referring to equitable exceptions to the automatic stay). On the other hand, In re Schwartz, 954 F.2d 569 (9th Cir. 1992); and In re Nat'l Env't Waste Corp., 129 F.3d 1052 (9th Cir. 1997) do not mention any "extreme circumstances" requirement to annul the stay and instead simply balance the equities of the case.

No Ninth Circuit case has actually applied the restrictive "extreme circumstances" standard to annul the stay. This is true

9

even in cases that have suggested this narrow standard. In _Kissinger_, for example, the Ninth Circuit simply balanced the equities of the case and relied on non-extraordinary circumstances in its decision confirming the bankruptcy court's decision to annul the stay, including: that there would have been cause to lift the stay, the failure to obey the stay was caused by a state court judge rather than the creditor, and not annulling the stay would impose an undue hardship on creditors. _In re Kissinger_, 72 F.3d at 109.

In the end, the Ninth Circuit has simply balanced the equities of the case when deciding whether stay annulment was appropriate, even in cases where it articulated an extraordinary circumstances standard. We agree with the Panel in _Fjeldsted v. Lien (In re Fjeldsted)_, 293 B.R. 12 (9th Cir. BAP 2003) that "extreme or extraordinary circumstances" should not be required to annul the stay and, instead, a court should apply a case-by-case approach. _See In re Eastlick_, 349 B.R. 216, 226-27 (Bankr. D. Idaho 2004); _see also In re Sullivan_, 2006 WL 1686732 (E.D. Cal. 2006) (agreeing with _Fjelsted_ that extraordinary circumstances are not needed to annul the stay).

The case-by-case approach requires a bankruptcy court to balance the equities of the case to determine whether there is cause to annul the stay. When analyzing a request to annul the stay, the two main factors considered by courts are: "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." _In re Nat'l Env't Waste Corp._, 129 F.3d at 1055.

10

The Panel has set forth a more expanded list of factors that may bear on a motion for retroactive annulment of the stay, including:  the number of bankruptcy filings; whether, in a repeat filing case, there is an intent to hinder and delay creditors; the extent of prejudice to creditors; a debtor's overall good faith; whether creditors took action with knowledge of the stay; whether a debtor complied with the Bankruptcy Code and Rules; the ease of restoring parties to the *status quo ante*; the costs of annulment to debtors and creditors; how quickly creditors moved for annulment or how quickly debtors moved to set aside a foreclosure sale; whether creditors moved for stay relief after learning of the bankruptcy; whether annulment of the stay will cause irreparable injury to the debtor; and whether stay relief will promote judicial economy.  In re Fjeldsted, 293 B.R. at 25.  No one factor is dispositive and the list of factors should, instead, serve as "a framework for analysis and not a scorecard."  Id.

### 2.    Findings of Fact and Conclusions of Law

The filing of an objection to the Motion to Annul initiated a contested matter, subject to Rule 9014.  See Rule 4001(a).  In a contested matter, the bankruptcy court must make findings of fact and state its conclusions of law, either orally on the record or in a written decision.  Rule 9014(c)(incorporating Rule 7052, which in turn incorporates Civil Rule 52).  "These findings must be sufficient to enable a reviewing court to determine the factual basis for the court's ruling."  Veal v. Am. Home Mortg. Servicing, Inc. (In re Veal), 450 B.R. 897, 919 (9th Cir. BAP 2011) (citing Vance v. Am. Haw. Cruises, Inc., 789 F.2d 790, 792

11

(9th Cir. 1986)).

We may conduct appellate review, even when a bankruptcy court does not make formal findings, "if a complete understanding of the issues may be obtained from the record as a whole or if there can be no genuine dispute about omitted findings." In re Veal, 450 B.R. at 919-20. Moreover, we may affirm on any basis supported by the record. Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

The bankruptcy court in this case did not make detailed findings of fact and conclusions of law at the July Hearing, October Hearing or at the hearing on the motion for stay pending appeal. Although the bankruptcy court's findings of fact and conclusions of law are sparse, a review of the record supports the bankruptcy court's reasons for retroactively annulling the stay.

### 3. Balancing the Equities of the Case

The bankruptcy court properly applied the case-by-case approach in its decision to annul the stay. The record before the Panel reveals that the bankruptcy court did not clearly err in finding the equities of the case favored annulling the stay. On the one hand, BNYM apparently had notice of the involuntary bankruptcy prior to initiating its postpetition foreclosure of the Property. BNYM conceded at oral argument that it rescinded the first trustee's sale based on knowledge of the instant bankruptcy.[8]

---

[8] The Debtor argues that, because BNYM maintained at all times leading up to oral argument that BNYM did not have notice of the bankruptcy before it filed its Motion to Annul, BNYM's position
(continued...)

12

On the other hand, the nature of this case and the Debtor's conduct weighs in favor of annulling the stay. The involuntary petition was filed in an improper venue[9] and under three aliases of the Debtor, "Norma Ceralde aka Michael Henry aka Nolan A. Smith." Also, the Petitioning Creditors did not appear or take any action in this bankruptcy, beyond filing the petition. This involuntary bankruptcy had all the hallmarks of a fraudulent filing.

Although the bankruptcy court did not impute fraud to the Debtor, the Debtor's lack of diligence or engagement in the involuntary bankruptcy serves as additional grounds to annul the stay. Debtor's counsel noted at oral argument that the Debtor received notice of the involuntary bankruptcy petition immediately upon its filing. However, the Debtor utterly failed to pursue any aspect of the bankruptcy until he was faced with an eviction proceeding in Los Angeles County nearly 7 months postpetition. The Debtor did not file schedules. Nor did he either object or consent to the involuntary bankruptcy petition. The Debtor, in effect, never availed himself of the stay in this case (and even gained a stay in his chapter 13 bankruptcy filed in May 2012) until he hired counsel in May 2012 and began raising

---

[8](...continued)
should constitute a lack of candor to the Court that precludes stay annulment. See In re Gonzalez, 456 B.R. 429, 443 (C.D. Cal. 2011) ("a party who seeks annulment has a duty of candor to the court"). However, we do not view the circumstances of this appeal as fitting that model.

[9] Venue was improper because the bankruptcy petition was filed in Nevada even though the Debtor resides in California and the Property is in California.

13

stay violation arguments.[10]

Despite his lack of participation in the involuntary bankruptcy case, the Debtor now seeks the benefits of the bankruptcy. The Debtor was the only one who benefitted from the involuntary bankruptcy as he has been living in the Property without making any payments to BNYM for almost two years.[11] The Debtor also filed a lawsuit in California state court seeking damages from BNYM for violating the stay imposed in this bankruptcy. The complete lack of diligence on the Debtor's part should preclude him from using the stay as a weapon in his California state action against BNYM.

The record is sufficient to conclude that the bankruptcy court was not clearly erroneous in finding that the equities of the case favored BNYM. The bankruptcy court had wide discretion to decide whether to retroactively annul the stay based on the equities of the case. The bankruptcy court's analysis and ruling were not "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." Anekqu, 695 F.3d at 978. The bankruptcy court did not abuse its discretion when it annulled the stay.

---

[10] It is particularly telling that Debtor's counsel consented to dismissal of the involuntary bankruptcy against the Debtor. In fact, Debtor's counsel stated at the October Hearing on the Motion to Annul that dismissal of this involuntary chapter 7 would render the Motion to Annul "moot."

[11] The Debtor's July 5, 2012 Declaration fails to indicate he tendered payments to BNYM at any relevant time nor did he supply an explanation as to why he had not made payments for nearly two years.

14

**CONCLUSION**

For all of the reasons set forth above, we AFFIRM the bankruptcy court's order granting BNYM's Motion to Annul.